## INGALLS v. CHRISTOPHERSON et al.

A note given by W. to a doctor for medical services was placed in the hands of defendants, who were attorneys, for collection, and suit was brought thereon, aided by attachment. To prevent a levy on his personal property, W. paid defendants some cash, and gave a new note for the balance secured by mortgage on his horses, whereupon the old note was surrendered. Subsequently defendants, claiming that plaintiff had purchased some of the mortgaged horses from W., brought suit for conversion of the horses, served a summons on plaintiff, and recovered judgment against him by default. No action was taken to set the judgment aside, but later, to prevent a threatened levy of execution thereon, plaintiff satisfied it, giving a note and mortgage. Held, that in an action by plaintiff against defendants for damages, on the ground that the action wherein the default judgment was ·rendered was instituted maliciously and that the note was obtained by coercion, evidence was admissible to show that the original note given by W, was given with the understanding that it was to be surrendered by the doctor, unless the latter effected a cure of W's malady, and that it was not cured.

An attachment in aid of an action pending, or an execution on a valid judgment, is prima facie lawful, and presumptively sufficient to justify a levy on the property of the defendant.

Defendants, claiming that certain horses on which they held a chattel mortgage had been purchased by plaintiff, brought an action against him for wrongful conversion of the horses, and secured judgment by default. Thereafter they went to plaintiff's farm, and threatened to levy on the horses. Plaintiff was busy with his harvest, and, not being able to spare the horses, gave a note and mortgage in satisfaction of the judgment. Held, that defendants were not guilty of a malicious abuse of process.

In order to constitute malicious abuse of process lawfully issued, it must be used for a purpose not intended by law.

(Opinion filed, January 7, 1908.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Action by George W. Ingalls against A. J. Christopherson and John T. Medin, co-partners under the firm name of Christopherson & Medin, and another. Judgment for defendants, and plaintiff appeals. Affirmed.

*Davis, Lyon & Gates,* for appellant.

There is a malicious abuse of process where the party employs process, legally and properly issued, wrongfully and unlawfully, for a purpose which it is not intended by law to effect. 19 Am. & Eng. Enc. 630; Mayer v. Walter, 64 Pa. St. 283; Kolka

v. Jones, 71 N. W. 558. The issuing of a warrant for attachment, returnable before a Justice in Minnehaha county, and its use in McCook county to compel the giving of a new note secured by chattel mortgage was illegal and must have been so understood by the respondents. The process, being illegal and known to be such, all acts under it were an abuse of the process. Nix v. Goodhile, 63 N. W. 701. The entry of judgment and the taking out of execution by the respondents, they knowing that they had no just claim against the appellant, and the proceedings under it were without probable cause and malicious. Pittsburg, etc. Co. v. Wakefield Hardware Co., 50 S. E. 573.

*Joe Kirby,* for respondents.

Until judgment is vacated and set aside it is conclusive. Rudolph v. Herman, 4 S. D. 431; 2 Elliott on Evidence, Sec. 1519. Having a legal right to do what was done duress cannot exist. York v. Hinkle, 80 Wis. 624. A judgment cannot be attacked collaterally if the Court rendering it had jurisdiction of the subject matter and the person of the defendant against whom the judgment was rendered. 2 Page on Cont., Sec. 547. Sec. 1522 2 Elliot on Ev.

FULLER, P. J. Upon all the evidence introduced at the trial, the court dismissed this action by appellant against respondents to recover $500, damages for the malicious abuse of process, and this appeal is from a judgment accordingly entered upon the merits, and from an order overruling a motion for a new trial.

The record shows that on the 3d day of April, 1905, W. B. Ingalls, a brother of appellant, executed and delivered his promissory note for $100, payable October 1st of that year, to Dr. Henry Marks, to whom he was indebted in that amount for medical treatment. This note was placed by Dr. Marks in the hands of respondents, Christofferson & Medin, for collection, and soon after its maturity they commenced an action thereon in justice court aided by an attachment, which was placed in the hands of the sheriff, who, with Christofferson, went to W. B. Ingalls' place of residence, and informed him that they were prepared to levy upon his personal property unless he would do something about the note. On behalf of appellant W. B. Ingalls testified that he

told them then that there was a mortgage on the property, but to avoid trouble he paid $30 in cash, and gave his note for $94 in the name of E. R. Medin, secured by a second mortgage on his horses and cattle, and, this being in full settlement of the amount due on the $100 note, the same was surrendered to him for calcellation. E. R. Medin, the payee in this note for $94, is the wife of respondent Medin, whose partner, Christopherson, testified that he took the note in her name as security for their attorney's fees, and soon afterward it became the property of the copartnership, Christopherson & Medin. So far as claimed to be pertinent, the property included in this second mortgage is described therein as "6 head of work horses, 4 mares and 2 geldings, the only work horses I own." Soon afterward the mortgagor, W. B. Ingalls, sold two colts to his brother, George, the appellant, but they were not at that time broken to harness, nor subject to the lien of the mortgage. Respondents, Christopherson & Medin, assumed that these young horses were covered by their mortgage, and, with the aid of a constable, took them from the possession of appellant for the purpose of foreclosure, and in preparing the published notice of sale they omitted to describe such property as "work" horses, in conformity with the recitals of the mortgage. Christopherson also testified at the trial of this action that appellant told him at the time the possession of the horses was demanded that they were his property, and not included in the mortgage given by his brother, and that he took the horses without any process whatever, and without positive knowledge of his right to do so. Whether they were included in the mortgage was the controlling issue in a claim and delivery action instituted by appellant against the constable and respondents, and wherein it was adjudged adversely to them that plaintiff was the owner end entitled to the possession of the property thus wrongfully taken and detained.

While appellant testified that none of the horses mortgaged by W. B. Ingalls to E. R. Medin were ever sold to or in his possession, there was testimony sufficient, though controverted, to sustain the findings of the court that a justice court summons in an action in the name of E. R. Medin against appellant for the wrong-

ful conversion of a span of horses was duly served upon him when the horses were taken under the foreclosure proceeding, and that on the 6th day of Feb., 1906, the justice of the peace before whom the action was regularly pending entered a valid default judgment in her favor against him for $119, being the value of the horses so controverted, with statutory costs. In view of this final judgment and the facts and circumstances disclosed by the record, it cannot be rightfully held that the trial court erroneously found that appellant had failed to prove the allegation of his complaint "that the horses described in the summons were the same horses that were seized and taken away for foreclosure sale." On July 28, 1906, respondent Christopherson caused an execution to issue on the above-mentioned judgment, and placed the same in the hands of the sheriff of Minnehaha county for the purpose of a levy, and together they went to appellant's place of residence, and found him busily engaged in the harvest field. At this time they took his note and mortgage for the amount collectible on execution, and the sheriff returned the same into justice court, where the judgment was fully satistfied. This note and mortgage was sold before maturity to the State Banking & Trust Company of Sioux Falls, and is apparently still outstanding and unpaid.

Appellant testified concerning the circumstances under which he executed the note and mortgage as follows: "I was cutting barley. Christopherson said he had a judgment against me. I asked him what the judgment was about. He says, 'In that case last spring.' He wanted me to straighten it up, or he said he would attach the stuff and take it away: I did not feel like letting my horses go right off the binder with the grain dead ripe, so I gave him a mortgae on the same horses. He threatened to take them away. I was pressed with work. The barley was dead ripe. I had two machines in there besides mine to cut it down. The sheriff said they had an execution."

In addition to these antecedent facts and circumstances, it was shown that the secured note for $94 given by W. B. Ingalls at the time of making the $30 payment is still retained by respondents, and an attempt was made to introduce at the trial, in con-

nection with the testimony of that witness, the printed advertisement of Dr. Marks, containing a copy of his photograph and the declaration: "My treatment irresistible." In support of this offer, to which an objection was made and sustained, counsel for appellant stated that they expected to show by the witness that the foregoing advertisement induced him to consult Dr. Marks, by whom he was assured that no charge would be made unless a cure was effected, and that he gave his promissory note for $100, with the understanding that it would be surrendered to him unless he fully recovered, and that he took the medicine prescribed without receiving any benefit. Proof of such a contract and that a cure was not affected might constitute failure of consideration and a valid defense to the action of Dr. Marks on the promissory note for $100, but no such defense was offered, and there is nothing in the proffered testimony tending to show any fraudulent representations in the inception of such note, or anything whatever material to this action between strangers to that transaction instituted to recover damages, both actual and exemplary, for the malicious abuse of process. Assuming that Dr. Marks fraudulently obtained the note, there is nothing to sustain the imputation that either of these respondents had knowledge of the fact when, as attorneys for him, they instituted an action thereon aided by attachment. Moreover, the circumstances under which W. B. Ingalls freely elected to settle the suit by giving another note, secured by a second mortgage on cattle and horses, justifies the inference that there was no malicious abuse of process connected with that action. As that testimony offered in no manner tended to prove a material allegation of the complaint, the objection thereto was properly sustained. Confessedly the default judgment entered in justice court against appellant for the wrongful conversion of a span of horses was valid, and no claim is made that the execution based thereon was irregular or for an excessive amount. An attachment in aid of an action pending, or in execution on a valid judgment, is prima facie lawful, and presumptively sufficient to justify a levy upon the property of the defendant. Apparently the only purpose of the attachment and execution was to enforce legal demands in the manner provided by law, and the acts com-

plained of cannot be considered ulterior to that purpose on account of the fact that it was accomplished by the manifestation of an intention to lawfully seize property and take it away unless a settlement was effected.

Judge Cooley declares that "regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process"; and as examples of the actionable abuse of process gives the following: "Entering up a judgment and suing out execution after the demand is satisfied; suing out an attachment for an amount greatly in excess of the debt; causing an arrest for more than is due; levying an execution for an excessive amount; causing an arrest when the party cannot procure bail; and keeping him imprisoned until, by stress thereof, he is compelled to surrender property to which the other is not entitled.  *  *  * Two elements are necessary to an action for the malicious abuse of legal process:  First, the existence of an ulterior purpose; and, second, an act in the use of the process not proper in the regular prosecution of the proceeding."   1 Cooley on Torts (3d Ed.) 354.   In the course of the opinion in the case of Lauzon v. Charroux, 18 R. I. 467, 28 Atl. 975, the court said: "As every man has a legal power to prosecute his claims in a court of law and justice, no matter by what motives of malice he may be actuated in doing so, it is necessary in this class of cases to aver and prove that he has acted not only maliciously, but without reasonable or probable cause."   Where, in an action for the malicious abuse of process, probable cause is shown for threatening to interfere with the property of plaintiff and the acts complained of were to effectuate a legitimate purpose, such as the collection of an honest debt, or the satisfaction of a valid judgment, it may safely be held that greater stress and impropriety than is disclosed by the record in this case is essential to a recovery.   In order to constitute the malicious abuse of process lawfully issued, it must be used for a purpose not intended by law, and, while the methods here employed to effect a justified purpose may be characterized as rigorous, they were not of a character that renders respondents amenable to an action for damages.

The judgment appealed from is affirmed.