LAYTON, Respondent v. CHASE, Appellant

(144 N.W.2d 561)

(File No. 10260. Opinion filed August 11, 1966)

**William H. Coacher,** Sturgis, for defendant and appellant.

**Robert La Fleur,** Rapid City, for plaintiff and respondent.

HANSON, Judge.

In this action for abuse of legal process plaintiff, Jean Layton, was awarded a verdict of $500 compensatory and $3,500 exemplary damages. Defendant appeals from the judgment.

Viewing the evidence in the light most favorable to plaintiff it appears that on May 17, 1963 she and her husband, Harvey Layton, moved their trailer house into a trailer court in Rapid City owned and operated by defendant, Art Chase. The Laytons had seven children. Their youngest child was born in October 1963 and except for this period Mrs. Layton was steadily employed as a waitress.

Harvey Layton had a liquor problem and only worked periodically. Sometime after moving into the Chase trailer court Mr. Layton rented a tractor from defendant to dig a basement. Defendant had to get the tractor from the job site as it was never returned. Although there is some dispute as to the amount defendant charged Layton for 7 days tractor rental at $25 per day for a total amount of $175. No part of this rental was ever paid.

In the summer of 1963 plaintiff applied for Aid to Dependent Children and was informed she would either have to divorce her husband or have him committed to an institution before being eligible to receive aid. He was committed to the Ft. Meade Veteran's Hospital for acute alcoholism about August 1, 1963, but apparently was able to return home from time to time on trial visits. In September plaintiff received her first ADC check in the amount of approximately $240.

On November 13, 1963 the Laytons moved from defendant's court. At the time they owed trailer space rental in the amount of $20. Plaintiff testified she offered to pay the $20 trailer rental, but defendant refused to accept it. According to her defendant demanded $75 more for tractor rental and said unless this money was paid the trailer could not be moved. Defendant offered to accept $75 in full settlement of both accounts. However, after some conversation the trailer was moved and nothing whatever was paid.

On November 20, 1963 defendant, Art Chase, directed his attorney, Iva T. Mount, to start action against defendants. Ac-

cordingly a garnishment affidavit and summons were prepared. Printed forms were used and the blank lines filled in. They were then served on Jean Layton, and the American National Bank of Rapid City, as garnishee defendant. Harvey Layton was out of the state and the garnishment papers were never served on him. However, the garnishment action was entilted **"Art Chase,** Plaintiff, VS Harvey Layton and Jean Layton, Defendants, and The American National Bank of Rapid City, S. Dak. Garnishee". The pertinent part of the affidavit is in the following form: **"Art Chase,** being first duly sworn, deposes and say that ........he is ......................the plaintiff ................. in the above entitled action; that the amount of the claim sued upon in said action to recover damages founded upon contract, express or implied, and for which the above named defendant is indebted to the plaintiff ................. is **$195.00** as follows: **For rental for ~~trailer and~~ trailer space between the dates of July 20, 1962, and October 17, 1963, all at the special instance and request of said defendants. And tractor rental".** The American National Bank filed a return which stated: "on the 20th of November, 1963 at 1:10 P.M. said bank was served with a garnishee summons in the above entitled action and that said bank was then, and is now, upon no account whatever indebted or under liability to the Defendant, Harvey Layton and Jean Layton, and that said bank then had and now has in its possession or under its control no real or personal property effects or credits of any description whatever belonging to said defendant, [or any description whatever belong to said defendant,] or any in which said defendant has any interest, and is in no matter liable as garnishee in this action, except $26.80 in checking." Another garnishment action was brought against the Laytons on the same day against the same bank account. This was referred to as the McNabb action.

The bank's Return does not show in whose name the checking account was carried, but Jean Layton testified it was in her name and the funds were derived from Aid to Dependent Children. Mrs. Layton retained an attorney and instead of filing exemptions a motion to dismiss the garnishment proceedings was made on the grounds the garnishment affidavit was incorrect, untrue, and insufficient. A hearing was had and the garnish-

ment proceedings were dismissed. The reason for dismissal is not clearly stated, but apparently is based on the discrepancy in the dates of the account and the use of the printed singular word "defendant" instead of "defendants" in the garnishment affidavit. It should be noted, however, that in the typed portion of the affidavit and the garnishee summons the plural word "defendants" appears.

This action by Jean Layton against Art Chase for abuse of legal process followed. Plaintiff's theory of action is that defendant knowing her bank account was exempt from garnishment wilfully and maliciously caused garnishment proceedings to issue with intentions to vex, harass, and coerce her into paying tractor rental which she did not owe and in connection with such proceedings defendant falsely stated in his affidavit that rent was due from July 20, 1962 to October 17, 1963.

■■ Abuse of process consists of the malicious misuse or misapplication of legal process after its issuance to accomplish some collateral purpose not warranted or properly attainable thereby. 1 Am.Jur.2d Abuse of Process, § 1, p. 250. It is not an action for maliciously causing legal process to be issued. Just v. Martin Bros. Co., 37 S.D. 470, 159 N.W. 44. Its essential elements are: (1) The existence of an ulterior purpose, and (2) A wilful act in the use of the process not proper in the regular prosecution of the proceeding. Ingalls v. Christopherson, 21 S.D. 574, 114 N.W. 704.

The wrong, according to Harper & James in Vol. 1 The Law of Torts, § 4.9, p. 330, is said to be "committed when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect. It differs from malicious prosecution in that it is not necessary to show that the action in which the process was used was without probable cause or that it terminated favorably to the plaintiff. The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather 'abuse,' of process in connection therewith—as the Pennsylvania court has aptly put it, for a perversion of legal

process. The process of the law must be used improperly and this means something more than a proper use from a bad motive. Though 'malice' in the sense of unjustifiable or improper motive is essential to a recovery for malicious abuse of process, it is not alone sufficient ＊ ＊ ＊ If the process is employed from a bad or ulterior motive, the gist of the wrong is to be found in the uses to which the party procuring the process attempts to put it. If he is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated." See also Restatement of Torts, § 682, Cooley on Torts 4th Ed. § 131, p. 434, 72 C.J.S. Process § 119, p. 1187, Annotations in 80 A.L.R. 580. According to Prosser, The Law of Torts 3rd Ed., p. 877 the improper purpose involved in actions of this nature "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort".

██ It is conceded that plaintiff, Jean Layton, and her husband owed defendant $20 for trailer court rental at the time of the garnishment. Also Harvey owed defendant a disputed amount of money for tractor rental. Defendant commenced garnishment proceedings against both. The bank's disclosure included both and indicated the Laytons had a checking account in the bank in the amount of $26.80. The garnishment affidavit probably is not artistically drawn, but the discrepancies in dates and amounts appear to be nothing more than trivial immaterialities which were matters of subsequent proof and correction. The facts do not reflect a malicious abuse of legal process for the accomplishment of a collateral purpose other than the collection of alleged debts. March v. Cacioppo, 37 Ill.App.2d 235, 185 N.E.2d 397; Ammons v. Jet Credit Sales, Inc., 34 Ill.App.2d 456, 181 N.E.2d 601. Plaintiff's contentions completely disregard the crucial fact that the

garnishment proceeding was not brought against her alone. It included her husband as a party defendant and he was indebted to Chase for tractor rental.

■ The repeated or successive garnishment of exempt property may, under certain circumstances, support an action for the abuse of process. See Annotation in 85 A.L.R. 662. Also see SDC 1960 Supp. Ch. 37.50 which provides a specific remedy for the oppressive or repeated garnishment of exempt earnings. However, the mere garnishment of money or property which may be claimed as exempt is not sufficient. The exemptions provided for in Chapter 51.18 are not self-executing nor do they insulate a debtor against levy, garnishment, or attachment. The right to claim exemptions is a personal privilege of the debtor and the burden is on him to make such claim. SDC 1960 Supp. 37.4903; 22 Am.Jur., Exemptions, § 119, p. 90. Plaintiff did not avail herself of this relief.

■ Before a plaintiff may recover for abuse of process he must show the damages claimed occurred as the natural and probable consequences of defendant's wrong. Quaranto v. Silverman, 345 Mass. 423, 187 N.E.2d 859. The record offers no explanation why plaintiff's alleged damages were the natural and probable consequences of defendant's garnishment when the same funds were garnisheed by a different party on the same day.

Reversed with instructions to enter judgment for defendant notwithstanding the verdict.

All the Judges concur.