Thomas BRISHKY and Betty Brishky,
Plaintiffs and Appellants,

v.

The STATE of South Dakota; John E.
Haak, Individually and as Assistant At-
torney General for the State of South
Dakota; Susan Mollison, Individually
and as Program Manager, Driver Im-
provement Program, Department of
Commerce and Regulation, State of
South Dakota; and Northland Insur-
ance Company, Inc., Defendants and
Appellees.

No. 17325.

Supreme Court of South Dakota.

Argued April 23, 1991.

Decided Dec. 24, 1991.

James M. Cremer, Bantz, Gosch, Cremer, Peterson & Oliver, Aberdeen, for plaintiffs and appellants.

Richard J. Helsper, Erickson, Helsper & O'Brien, P.C., Brookings, for defendants and appellees South Dakota, Haak and Mollison.

Shelley R. Wieck, Siegel, Barnett & Schutz, Aberdeen, for defendant and appellee Northland Ins. Co., Inc.

HENDERSON, Justice.

### PROCEDURAL HISTORY/ISSUES

Thomas and Betty Brishky commenced this action on February 12, 1990, against the State of South Dakota (State), John E. Haak, Assistant Attorney General (Haak), Susan Mollison, Program Manager of the Driver Improvement Program (Mollison) and Northland Insurance Company (Northland). State, Haak and Mollison filed an Amended Answer with Crossclaim against Northland on April 17, 1990. On March 14, 1990, Northland filed a separate Answer with a reply. On April 18, 1990, Northland filed an Answer to Crossclaim and a Crossclaim against State, Haak and Mollison. On May 2, 1990, State, Haak and Mollison filed a Reply to Crossclaim of Northland.

On July 10, 1990, State, Haak and Mollison filed a Motion for Summary Judgment against Brishkys. On July 20, 1990, Northland filed its own Motion for Summary Judgment. On September 7, 1990, the Summary Judgment Motions of all Defendants were granted. On Appeal, Brishkys raise two issues as to the State, Haak and Mollison as follows:

1. Was the suspension of Brishky's license on March 2, 1988, a continuing wrong for which the cause of action accrued upon termination of the wrong by reinstatement of the license on March 29, 1989, thereby stripping these defendants of the cloak of sovereign immunity since the State purchased liability insurance effective July 1, 1988? Further, are Haak and Mollison immune from suit if they were acting within the scope of their employment?

2. Did Brishkys give timely notice of the claim pursuant to SDCL 3-21?

Brishkys further assert one issue on appeal as to Northland:

3. Did Northland's use of the financial responsibility act to obtain suspension of Brishky's driver's license based on a judgment Northland obtained against Brishky which did not arise out of a motor vehicle accident, but instead arose out of a misappropriation, fraud and conversion action by Northland against Brishky, constitute abuse of process?

The State, Haak and Mollison raise one issue:

Does the failure of Brishky to exhaust his administrative remedies under SDCL 32-35-102 and SDCL 1-26 deprive the

court of jurisdiction to hear this action? We decline to address this issue, deeming it to be nonmeritorious.

We affirm in part (on issues one and two) and reverse in part (issue 3) holding there is a question of fact on the abuse of process question.

## FACTS

On July 15, 1985, Thomas Brishky sustained a fire in the engine compartment of his tractor/trailer, a 1976 Peterbilt diesel model. As a result of this accident, the tractor was subject to "down-time" in order to repair the damage. Arrangements were made to have the tractor repaired by Kearns Machinery Company in Sioux Falls, South Dakota. The tractor/trailer was repaired and released to Brishky on or about August 16, 1985.

At the time of the accident, Thomas Brishky was insured by Northland, under a commercial auto policy which protected him against liability for his own negligence and against physical damage to the tractor, but did not cover loss of income.

Prior to the vehicle's release, the Brishkys signed a "Statement of Loss." This verified the total amount of repairs to be $7,986.81. Northland then issued a claim check on August 22, 1985, with Thomas Brishky as sole payee. Kearns Machinery was not named on the check. Thomas Brishky was notified by Darrell Buller (Buller) of Crawford Risk Management, an independent adjuster retained by Northland, that this was an error. Thomas Brishky failed to return the check to Buller when asked to do so. Consequently, Kearns Machinery was not paid.

In November 1985, Kearns Machinery sued Buller, Crawford & Co., and Thomas Brishky for recovery of the repair costs. Northland, on behalf of Buller and Crawford & Co., paid Kearns Machinery and proceeded to seek recovery from Thomas Brishky. After requests for reimbursement of the repair costs were ignored, a Summons and Complaint was issued September 19, 1986, against the Brishkys. It requested actual and punitive damages arising out of the misappropriation of funds obtained under Brishkys' insurance policy. In response to the Summons and Complaint, Thomas Brishky answered pro se, claiming entitlement to the insurance proceeds by reason of repair delays.

On May 20, 1987, Northland, via its attorney Forrest Allred (Allred), served a Motion for Summary Judgment upon Thomas Brishky. A hearing was scheduled for May 29, 1987. The Brishkys did not appear at the hearing and summary judgment was granted in favor of Northland.[1] The Judgment was served on the Brishkys June 4, 1987.

After 30 days of no response from the Brishkys, Northland began enforcement proceedings. However, no assets were found to satisfy the judgment. Discussions regarding possible settlement were maintained between the Brishkys and Allred but fell through when attempts to reach the Brishkys were unsuccessful.

On or about February 16, 1988, Allred requested that a copy of the Judgment be sent to the South Dakota Department of Commerce, Driver Improvement Program, requesting that Thomas Brishky's driver's license be suspended pursuant to the Financial Responsibility Laws in SDCL 32–35. Subsequently, Allred submitted a report of the circumstances which gave rise to the Judgment. On February 29, 1988, a telephone conference call was conducted between Judge Dobberpuhl, Haak and Allred, whereby it was determined that the suspension of a driver's license in a noncollision case is acceptable under SDCL 32–35 and an Order suspending Thomas Brishky's driver's license, registration and license plates was entered.

On March 28, 1988, the Brishkys consulted Haak concerning this matter. They were advised that the only way to get the license reinstated was to either pay the judgment or file bankruptcy. The Brishkys then filed for Chapter 7 Bankruptcy.

1. Northland received $7,986.81 in principal, $2,827.73 in prejudgment interest, $5,000.00 for exemplary or punitive damages and $4,963.50 in attorney's fees.

On January 12, 1989, the Brishkys were advised by Haak that although a bankruptcy discharge had been entered, the license could not be reinstated because the underlying judgment had not yet been formally discharged of record. On March 22, 1989, Brishkys were told by Mollison that although the judgment was satisfied, the suspension could not be withdrawn until they filed proof of financial responsibility.

Around the end of March, Mollison agreed to reinstate the driver's license and sent Brishky a clearance which enabled Brishky to obtain a duplicate driver's license. Brishky was also informed that the suspension of his driving privileges had been dismissed. The present action ensued.

## DECISION

I. *The suspension of Brishky's license on March 2, 1988, was not a continuing wrong. Further, the State, Haak and Mollison were acting within the scope of their employment.*

█ Brishky argues that he suffered a continuing injury as a result of the deprivation of his driving privileges from March 2, 1988 to March 29, 1989. He reasons that since the cause of action accrued during the period of the State's, Haak's, and Mollison's insurance coverage, this action is not barred by the doctrine of sovereign immunity.[2] The State, Haak and Mollison disagree, asserting that the act of revoking Brishky's license on March 2, 1988, would not constitute a continuing tort nor a continuation of unlawful acts.

█ Generally, when a tort involves continuing injury, the cause of action accrues and the statute of limitations commences when the wrong terminates. *Alberts v. Giebink*, 299 N.W.2d 454 (S.D. 1980). Although this Court has never, in depth, explained the nature of a continuing wrong, other jurisdictions have. A continu-

ing violation is occasioned by continual unlawful acts, not by continual ill effects from an original action. *Ward v. Caulk*, 650 F.2d 1144 (9th Cir.1981). In *Eppling v. Seuntjens*, 254 Iowa 396, 117 N.W.2d 820 (1962), the claimant sued for damage to his property attributable to flooding caused by the defendants' erection of a dike. It was stated that the plaintiff's causes of action for the intermittent floodings accrued as each episode occurred, and the Iowa Supreme Court permitted the plaintiff to recover for damages sustained in the five-year period preceding commencement of the action.

However, in our case, the suspension of Brishky's license was immediate and constituted a single injury. Therefore, the cause of action accrued prior to the effective date of insurance coverage, that being July 1, 1988. We must determine: First, if the trial court correctly applied the doctrine of sovereign immunity and, secondly, if Haak and Mollison were acting within the scope of their employment when the State, through its agents, decided that Brishky's driver's license was to be suspended.

█ SDCL 21–32–17 states:

Except as provided in § 21–32–16, any employee, officer or agent of the state, while acting within the scope of his employment or agency, whether such acts are ministerial or discretionary, is immune from suit or liability for damages brought against him in either his individual or official capacity.

SDCL 21–32–16 states:

To the extent such liability insurance is purchased pursuant to § 21–32–15 and to the extent coverage is afforded thereunder, the state shall be deemed to have waived the common law doctrine of sovereign immunity and consented to suit in the same manner that any other party may be sued.[3]

---

2. The State and its employees are protected by the doctrine of sovereign immunity except to the extent liability insurance coverage is available. SDCL 21–32–15, SDCL 21–32–16, SDCL 21–32–17. The State of South Dakota insured itself on July 1, 1988, by entering into a Partic-

ipation Agreement with the Public Entity Pool for Liability.

3. It is undisputed that the State of South Dakota did not have in place any liability insurance to cover various agencies and employees.

This Court established the following three-step test to determine whether sovereign immunity applies to the State, its governmental subdivisions, or their employees:

(1) Whether the [governmental unit] was the real party in interest;

(2) Whether the employee was sued in an official of personal capacity; and

(3) Whether the employee was exercising a discretionary or ministerial function.

*Siefkes v. Watertown Title Co.,* 437 N.W.2d 190 (S.D.1989); *Reiman v. Solem,* 337 N.W.2d 804 (S.D.1983).

Applying this test to the present case, we hold that the State is the real party in interest. We also hold that Haak is being sued in his capacity of Assistant Attorney General and Mollison is being sued in her capacity as Program Manager of the Driver Improvement Program. Finally, Haak's actions in advising the Department of Motor Vehicles and the acts of Mollison in revoking Brishky's driver's license, are clearly discretionary functions.

II. *The Brishkys did not give timely notice of their claim pursuant to SDCL 3–21.*

■ Before a party may maintain an action for damages against the State or its employees, notice of the claim must be given to the Attorney General and to the public entity within 180 days after the injury.

SDCL 3–21–2 states:

No action for the recovery of damages for personal injury, property damage, error or omission or death caused by a public entity or its employees may be maintained against the public entity or its employees unless written notice of the time, place and cause of the injury is given to the public entity as provided by this chapter within one hundred eighty days after the injury.

SDCL 3–21–3 states:

Notice shall be given to the attorney general and the following officers as applicable:

(1) In the case of the state of South Dakota, to the commissioner of administration; . . . .

■ As discussed previously, the suspension of Brishky's license constituted a single injury. Therefore, he had 180 days from March 2, 1988, to comply with the applicable statutes. This was not done. Notice was given to the Attorney General and the Commissioner of Administration on September 7, 1989, one year, five days late. Therefore, the claim was not properly filed.

III. *Northland's use of the Financial Responsibility Act to obtain suspension of Brishky's driver's license, under these facts, constitutes a question of fact on alleged abuse of process to be determined at the trial court level.*

Brishkys argue that the use of the Financial Responsibility Act, embodied in SDCL 32–35, constituted an abuse of process. The definition of abuse of process can be found in the Restatement (Second) of Torts § 682 (1977):

One who uses a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

■ We have previously adopted 682 of the first edition of the Restatement of Torts. *Layton v. Chase,* 82 S.D. 270, 144 N.W.2d 561 (1966). Now, we adopt section 682, and comments a and b of the Restatement (Second) of Torts. The Restatement (Second) of Torts section 682 is identical to the Restatement of Torts section 682 in all respects except for the addition of the word "primarily" in the second edition. This revision narrows the claim of abuse of process as explained in new comment b:

b. "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant . . .

For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some action or refrain from it.

An additional commentary in the Restatement (Second) of Torts, section 682 app., attempted to clarify the essence of abuse of process:

Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions.

Other jurisdictions have defined abuse of process in great detail. It appears the general consensus is that the two elements of the tort are (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585 (1981); *see Strid v. Converse,* 111 Wis.2d 418, 331 N.W.2d 350 (1983). Applying these principles to the record made in connection with Northland's motion for summary judgment, we now address the issue at hand.

■ We now consider SDCL 32–35–52. **Suspension of license for failure to pay judgment.**

The department of commerce and regulation, upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration and any non-resident's operating privilege of any person against whom such *judgment* was rendered ... (emphasis added).

"Judgment" is defined in SDCL 32–35–1(4) as follows:

"Judgment," any judgment which shall have become final by expiration without appeal of the time within which an appeal might have been perfected, or by final affirmation on appeal, rendered by a court of competent jurisdiction of any state or of the United States, *upon a cause of action arising out of the ownership, maintenance, or use of any vehicle of a type subject to registration under the laws of this state, for damages, including damages for care and loss of services, because of bodily injury to or death of any person, or for damages because of injury to or destruction of property, including the loss of use thereof, or upon a cause of action on an agreement of settlement for such damages;* (emphasis added).

In construing the purpose of the Financial Responsibility Act, we stated, in dicta, in *Novak v. State Farm Mutual Auto Insurance Co.,* 293 N.W.2d 452 (S.D.1980):

The purpose behind this law is to protect against financially irresponsible persons from using our highways.

The Financial Responsibility Act defines a judgment which can be used as a vehicle for having one's license suspended in SDCL 32–35–1(4). SDCL 32–35–57 provides that a license suspension based on a judgment filed remains in effect until the judgment is stayed, satisfied in total or to the extent provided for in SDCL 32–35–59. This latter statute reads as follows:

Judgments referred to in §§ 32–35–43 to 32–35–62, inclusive, shall, for the purpose of this chapter only, be deemed satisfied:

(1) If twenty-five thousand dollars has been credited upon any judgment or judgments rendered in excess of that amount *because of bodily injury to or death of one person as the result of any one accident;* or

(2) If, subject to the limit of twenty-five thousand dollars because of bodily injury to or death of one person, the sum of fifty thousand dollars has been credited upon any judgment or judgments rendered in excess of that amount because of bodily injury to or death of two or more persons *as the result of any one accident;* or

(3) If twenty-five thousand dollars has been credited upon any judgment or judgments rendered in excess of that amount because of injury to or de-

struction of property of others *as a result of any one accident.*

However, payments made in settlements of any claims because of bodily injury, death or property damage arising from the accident shall be credited to reduce the amounts provided for in this section. (Emphasis added).

Here, Northland's judgment did not result from any one accident but was for misappropriation, fraud and conversion in the handling of a check issued by it to Brishky.

 Statutes are to be construed by the courts according to their intent as determined from the statute as a whole and enactments dealing with the same subject. It is inappropriate to disregard a statute pertaining to the same subject matter that modifies or limits the other statute. *Border States Paving, Inc. v. South Dakota Dept. of Revenue,* 437 N.W.2d 872 (S.D. 1989). We quote from a recent special writing in *Jensen v. Sport Bowl, Inc.,* 469 N.W.2d 370, 375 (S.D.1991) (Henderson, J., dissenting):

> Mr. Justice Felix Frankfurter, in a scholarly dissertation, found at 47 Colum.L.Rev. 527, 527–34, 538–45 (1947), expressed:
>
> > To go beyond [the statute] is to usurp a power which our democracy has lodged in its elected legislature. The great judges have constantly admonished their brethren of the need for discipline in observing the limitations. A judge must not rewrite a statute, neither to enlarge nor to contract it. Whatever temptations the statesmanship of policy-making might wisely suggest, construction must eschew interpolation and evisceration. He must not read in by way of creation. He must not read out except to avoid patent nonsense or internal contradiction.

We hold that the Financial Responsibility Act, when considered in its totality, is limited to dealing with judgments which result from an accident. The only "accident" in this case appears to be that Northland issued its check to only Brishky rather than Brishky and Kearns Machinery Company.

We question if the Act should be interpreted so as to provide a vehicle to correct an error of the type committed by Northland or as a mechanism to assist collection efforts. We note this holding in *Niensted v. Wetzel,* 133 Ariz. 348, 354, 651 P.2d 876, 882 (App.1982), wherein that court was considering the legal requirements for establishing an abuse of process claim:

> ... Liability should result only when the sense of awareness progresses to a sense of purpose, and, in addition the utilization of the procedure for the purpose for which it was designed becomes so lacking in jurisdiction as to lose its legitimate function as a reasonably justifiable litigation procedure....

 We hold that there exists a genuine issue of fact as to whether or not Northland's purpose in seeking the suspension of Brishky's license was a reasonably justifiable litigation procedure to be employed after failing on its execution and garnishments collection efforts.

Having reviewed the record thoroughly, and particularly the tort issue relative to abuse of process, we are convinced there are factual issues in dispute and that summary judgment was improperly granted. *Ritter v. Johnson,* 465 N.W.2d 196 (S.D. 1991). We note the holding in *Layton v. Chase,* 82 S.D. 270, 144 N.W.2d 561 (1966) and our specific language, 144 N.W.2d at page 563:

> Abuse of process consists of the malicious misuse or misapplication of legal process after its issuance to accomplish some collateral purpose not warranted or properly attainable thereby.... Its essential elements are: (1) The existence of an ulterior purpose, and (2) A wilful act in the use of the process not proper in the regular prosecution of the proceeding.
>
> \* \* \* \* \* \*
>
> If [defendant] is content to use the particular machinery of the law for the immediate purpose for which it was intended, he is not ordinarily liable, notwithstanding a vicious or vindictive motive. But the moment he attempts to attain

some collateral objective, outside the scope of the operation of the process employed, a tort has been consummated.... According to Prosser ... the improper purpose involved in actions of this nature 'usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, ...'

At the trial court level, the two essential elements must be factually and legally considered. Furthermore, appellants advocate there has been "extortion." Was there? It must be determined below. This Court cannot jump into the jury box.

Affirmative defense to the alleged tort of abuse of process may be presented below by the party asserting same. This may include that which has been suggested (but not fully briefed), i.e., advice of counsel (under our settled law) and the reliance upon the actions of Circuit Judge Dobberpuhl (going to good faith). Only testimony and exhibits may establish the elements or the affirmative defenses. We reverse on issue three.

Affirmed in part; reversed and remanded in part.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., specially concurs.

SABERS, Justice (specially concurring).

I write specially on Issue III, abuse of process to point out that:

The trial court clearly erred in granting summary judgment to Northland Insurance because Northland is bound by the acts of its collection agents, which under these circumstances, include Northland's attorney and may include an assistant attorney general and an official of the Department of Commerce. As for the circuit court's "ex parte" activity in aid of Northland's collection efforts, the best that can be said is that it was a mistake—he simply had no business taking part in such activity.

The clear purpose of SDCL 32–35–52 is to protect people on our highways—not to aid creditors in attempting to coerce judgment debtors to pay claims based on fraud.

This claim of abuse of process is similar to that in *Vreugdenhil v. First Bank of S.D.*, 467 N.W.2d 756, 760 (S.D.1991), where Justice Wuest writing for the majority stated: "[T]he legal community has known for years that procedural due process requires a hearing *before* a person is deprived of any significant property interest." By the same token, lawyers throughout the state have understood for years the intended purpose of the Financial Responsibility Act.

In effect, the circuit court permitted the defendant to prevail on the basis of an "advise of counsel" or "good faith" defense without even hearing the facts. This is 180 degrees contrary to every solid summary judgment case in this state. *See Breen v. Dakota Gear & Joint Co., Inc.*, 433 N.W.2d 221, 223 (S.D.1988); *Koeniguer v. Eckrich*, 422 N.W.2d 600, 601 (S.D.1988); *Blote v. First Fed. Sav. & Loan Ass'n*, 422 N.W.2d 834, 836 (S.D.1988); *Groseth Int'l, Inc. v. Tenneco, Inc.* 410 N.W.2d 159, 164 (S.D.1987) (*Groseth I*); *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 157 N.W.2d 19, 22 (1968).