Sherman MIESSNER, Plaintiff
and Appellant,

v.

ALL DAKOTA INSURANCE ASSOCI-
ATES, INC., a South Dakota Corpora-
tion, Stanley Rudge, individually and as
an officer of All Dakota Insurance Asso-
ciates Inc., and Leanne Weideman, De-
fendants and Appellees.

No. 18231.

Supreme Court of South Dakota.

Considered on Briefs Oct. 6, 1993.

Decided April 13, 1994.

Robert M. Nash, Wilson, Olson, Nash Becker, Smoot, P.C., Rapid City, for plaintiff and appellant.

Wayne F. Gilbert, Johnson Huffman, P.C., Haven L. Stuck, Rapid City, for defendants and appellees.

SABERS, Justice.

Sherman Miessner (Miessner) appeals summary judgment against him on his malicious prosecution claims for (1) forgery, (2) larceny and embezzlement, and (3) Wyoming forgery and theft, and on his claims for defamation and abuse of process. We affirm.

**Facts**

Miessner and Stanley Rudge (Rudge) were partners in the insurance business since May, 1987. Miessner sold property and casualty insurance and Rudge sold life and health insurance. Miessner and Rudge formed the corporation All Dakota Insurance Associates, Inc. (All Dakota) in January, 1988. Miessner and Rudge acquired an additional insurance agency in Gillette, Wyoming named Frontier Insurance Agencies, Inc. (Frontier) in January, 1988. Leanne Weideman (Weideman) was hired to assist at All Dakota in March, 1988.

In 1989, the South Dakota Division of Insurance brought a proceeding against Miessner, Rudge, and All Dakota based upon a complaint from Titan Indemnity Insurance Company (Titan). Following a hearing on August 8, 1989, at which Miessner did not appear, the South Dakota Director of Insurance revoked Miessner's non-resident insur-

ance agent's license for misappropriating and converting to his own use $68,824.70 belonging to Titan. Miessner did not appeal from the findings of fact and conclusions of law and did not appeal the final Order of Revocation.

The Wyoming Insurance Department commenced administrative proceedings against Frontier and Miessner on October 19, 1989, alleging misappropriation or conversion of trust funds on three occasions and forgery of Rudge's signature on a $20,000 check. On December 13, 1989, Miessner entered into a stipulation with the Wyoming Insurance Department and admitted that he wrote checks on three occasions which withdrew funds from his trust account. Miessner did not contest the allegation that he had, without any authority, forged Rudge's signature on a check for $20,000.00. Based on the terms of the stipulation, Miessner's Wyoming insurance agent's license was suspended for one year and he was fined $1,000.00. The action against him was dismissed.

Rudge consulted attorney Robert Van Norman (Van Norman) in July, 1989, concerning Miessner's acceptance of a motor vehicle from a customer in lieu of payment of an insurance premium. Van Norman advised Rudge to take the matter to law enforcement authorities. As a result, a complaint was filed by the Pennington County State's Attorneys Office against Miessner alleging embezzlement of property received in trust and a second count of larceny.

On December 27, 1990, Magistrate Michael J. O'Connor, after a preliminary hearing, determined that probable cause existed to support the allegations made in the complaint and bound Miessner over for trial. A court trial was held March 25, 1991. At the close of the State's evidence, Miessner moved for a directed verdict of dismissal. His motion was denied. At the close of all the evidence, the trial court ruled that the State failed to prove beyond a reasonable doubt that a crime was committed and acquitted Miessner.

Miessner appeared in the United States District Court for the District of South Dakota, Western Division on January 28, 1992.

He pled guilty to the charge that he embezzled and converted to his own use $12,500.00 which belonged to the Oglala Sioux Tribe Public Safety Commission and the Oglala Sioux Tribe Headstart Program.

Miessner filed a complaint against All Dakota, Rudge, and Weideman (Defendants) alleging malicious prosecution, defamation, and abuse of process. Defendants filed a Motion for Summary Judgment. Following a hearing, Defendants' motion was granted. According to the Order for Summary Judgment, there was "no genuine issue as to any material fact, and the efforts by [Miessner] to raise a material fact [were] precluded by prior adjudications and administrative determinations[.]" Miessner appeals.

Our standard of review for a grant or denial of summary judgment is well settled. In *Waddell v. Dewey County Bank,* we stated:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey Cnty. Bank,* 471 N.W.2d 591, 593 (S.D.1991) (citations omitted).

*Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993); *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

### 1. MALICIOUS PROSECUTION

According to Miessner's complaint: (1) Rudge and Weideman maliciously, recklessly and without probable cause, encouraged the Pennington County Sheriff and State's Attorney to commence a prosecution for forgery of a check with intent to defraud; (2) Rudge falsely, maliciously, and without probable cause, contacted the authorities to commence criminal proceedings against Miessner charging him with the crimes of larceny and embezzlement; and, (3) Rudge and Weideman attempted to cause a prosecution of Miessner in Wyoming for forgery and theft causing Miessner to lose his Wyoming license.

The six elements necessary to sustain an action for malicious prosecution are:

1. the commencement or continuance of an original criminal or civil judicial proceeding;
2. its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding;
3. its bona fide termination in favor of the present plaintiff;
4. the absence of probable cause for such proceeding;
5. the presence of malice; and
6. damages conforming to legal standards resulting to plaintiff.

*Weber v. Western Bank,* 336 N.W.2d 652, 653 (S.D.1983) (citing *Kunz v. Johnson,* 74 S.D. 577, 57 N.W.2d 116 (1953)).

Actions for malicious prosecution are not favored by the law because public policy requires that those who have good reason to believe that the law has been violated should be encouraged to bring that information to the attention of the law enforcement authorities, to the end that those guilty of crime may be brought to trial and punished. For that reason limitations have been placed upon such actions, including the requirement that the plaintiff must sustain the burden of proof that the defendant did not have probable cause to initiate the criminal prosecution.

*Lampos v. Bazar, Inc.,* 270 Or. 256, 527 P.2d 376, 380–81 (1974) (citations omitted).

In order to sustain an action for malicious prosecution, all six elements must be met. *See Weber,* 336 N.W.2d at 653–54. If the plaintiff cannot sustain any one of the six elements, the action fails. Defendants argue

that summary judgment was properly granted as to all three matters cited in the complaint because Miessner cannot sustain all six necessary elements.

### (1) Forgery

■ Miessner argues that because the Pennington County forgery allegation was not prosecuted, probable cause was lacking.[1] Defendants claim that because the authorities dropped the investigation and decided not to prosecute, a judicial proceeding was not commenced.

[A]lthough the plaintiff has the burden of proof to establish that the criminal prosecution was initiated by defendant without probable cause, in considering the sufficiency of the evidence on that issue on a motion for nonsuit or directed verdict, the evidence must be viewed in the light most favorable to the plaintiff in the event of any conflict in the testimony and the plaintiff is entitled to the benefit of all reasonable inferences from the evidence in his favor.

*Lampos,* 527 P.2d at 381 (citation omitted).

■ Rudge went to Pennington County law enforcement authorities and filed an affidavit of forgery. He was then interviewed by Detective Edward Hofkamp (Hofkamp) who investigated the allegations and completed a case report. Hofkamp requested that a warrant be issued charging Miessner with forgery. *See* Keeton, Prosser and Keeton on the Law of Torts § 119, at 871 (issuing a warrant for plaintiff's arrest, although it has never been served, usually sufficient to constitute instituting a criminal proceeding). The warrant request was forwarded to Pennington County State's Attorney Dennis Groff (Groff). The investigation was subsequently dropped when Miessner brought Defendants' books and records to the attention of the State's Attorney. The reason the investigation was dropped is not shown. Ap-

parently, Groff made a decision that the facts did not merit a criminal prosecution. In Miessner's own words, the prosecution was "headed off" before a warrant was issued.

If the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding.

Keeton, Prosser and Keeton on the Law of Torts § 119, at 872–73.

The threshold question in a malicious prosecution action arising in the criminal context is whether criminal proceedings were ever initiated. Absent the commencement of criminal proceedings, it obviously cannot be said that the plaintiff was ever the object of *any* "prosecution," much less a "malicious" prosecution.

*Jackson v. District of Columbia,* 710 F.Supp. 13, 14 (D.D.C.1989) (emphasis in original).

Since Miessner does not allege, nor does the record reveal, that any judicial proceeding took place in conjunction with the Pennington County forgery allegations, his cause of action for malicious prosecution cannot be sustained. Summary judgment for the defendants is affirmed.

### (2) Larceny and Embezzlement

According to Defendants, the larceny and embezzlement charges filed against Miessner cannot establish a malicious prosecution action because probable cause existed and the allegations were made on advice of counsel.[2]

*Advice of counsel.*

■ Defendants contend that good faith reliance upon the advice of independent counsel is conclusive of the issue of probable cause. They cite *Kaarup v. St. Paul Fire*

---

1. Abandonment of the prosecution by the public prosecutor's nolle prosequi is not however, standing alone, prima facie evidence that probable cause is lacking. W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 119, at 881 (5th ed. 1984).

2. Defendants also argue that the embezzlement and larceny charges filed against Miessner can-

not establish a malicious prosecution action because they did not commence the action. Clearly, Defendants initiated this action and we find this argument without merit. "The defendant may be liable either for initiating or for continuing a criminal prosecution without probable cause." Keeton, Prosser and Keeton on the Law of Torts § 119, at 872.

*and Marine Ins. Co.,* 485 N.W.2d 802 (S.D. 1992). In *Kaarup,* this court stated:

> If a defendant in a malicious prosecution action, in good faith sought the advice of an attorney before commencing or maintaining the civil proceeding against plaintiff and *made a full, fair and complete disclosure to the attorney of all the pertinent and material facts of which the defendant had knowledge tending to prove or disprove the civil allegations* and thereafter defendant acted upon the advice of the attorney and in the belief of plaintiff's civil liability, then probable cause existed for commencing or maintaining a civil proceeding against plaintiff.

485 N.W.2d at 805 (emphasis added) (citations omitted). *See Lampos,* 527 P.2d at 382 ("All the authorities agree that in order to make out this defense it must appear that the defendant made a full, fair and honest statement of all the material circumstances of the supposed guilt which are within his knowledge."). After examining the entire record, whether Rudge made a full, fair and complete disclosure to Van Norman of the facts known to him at that time is a genuine issue of material fact. *Brishky v. State,* 479 N.W.2d 489, 496 (S.D.1991) (Sabers, J., concurring specially) ("In effect, the circuit court permitted the defendant to prevail on the basis of an '[advice] of counsel' or 'good faith' defense without even hearing the facts. This is 180 degrees contrary to every solid summary judgment case in this state.") *See Lampos,* 527 P.2d at 382–83 ("Normally [ ] it is a jury question whether a full and fair disclosure has been made.") Therefore, Defendants' motion for summary judgment on this point should not have been granted.

*Absence of probable cause.*

> One of the elements of malicious prosecution which a plaintiff has the burden of proving is the absence of probable cause for the underlying criminal proceeding. We have defined probable cause in this context as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty."

*Palmer Ford, Inc. v. Wood,* 298 Md. 484, 471 A.2d 297, 301–02 (1984) (citations omitted).

■ Miessner argues that because he was acquitted of the charges of embezzlement and larceny, probable cause was lacking. Acquittal of the accused at trial, however, "is no evidence that probable cause was lacking, since acquittal amounts only to a decision that guilt has not been proved beyond a reasonable doubt." Keeton, Prosser and Keeton on the Law of Torts § 119, at 880. *See also Palmer Ford,* 471 A.2d at 307 (stating that acquittal after trial is not in and of itself evidence of a lack of probable cause). Defendants counter that probable cause was determined on at least two occasions. Initially, when the magistrate determined after a preliminary hearing that probable cause existed to support the allegations of the complaint and bound Miessner over for trial and, secondly, when Miessner moved for a directed verdict of dismissal and his motion was denied.

> There is good agreement that certain rulings unfavorable to the accused in the criminal case furnish evidence or presumptions that the prosecutor had probable cause. The magistrate's commitment and the grand jury's indictment constitute at least some evidence of probable cause.

Keeton, Prosser and Keeton on the Law of Torts § 119, at 881.

It appears that Miessner failed to show the absence of probable cause. He alleges, however, in his complaint, affidavit, and answers to Defendants' interrogatories, that Defendants fabricated false evidence and gave false and malicious testimony at the preliminary hearing and court trial. According to Miessner's Affidavit In Opposition to Motion For Summary Judgment:

> In the course of the prosecution and trial [for embezzlement and larceny], Defendants fabricated false evidence as shown by Exhibit 9, which is a summary of Leanne Weideman's calculations from State's Exhibit DD. Defendants further gave false and malicious testimony in the preliminary hearing and trial of my case as shown by my Answers to Defendants' In-

terrogatories dated June 8, 1992, which are attached hereto as Exhibit 10 which detail the false and malicious statements made by Defendants Rudge and Weideman during the preliminary hearing and trial in Circuit Court before the Honorable Merton B. Tice, Jr.

As previously noted, while the evidence must be viewed in the light most favorable to the non-moving party and reasonable doubts must be resolved against the moving party, the non-moving party must present specific facts showing that a genuine, material issue for trial exists. *Lamp,* 496 N.W.2d at 583; *Hughes–Johnson Co. v. Dakota Midland Hosp.,* 86 S.D. 361, 364, 195 N.W.2d 519, 520–21 (1972).

> Allegations which do not set forth specific facts will not prevent the issuance of a summary judgment. (Citations omitted.) The rationale for the rule was explored in *Hughes–Johnson Co. v. Dakota Midland Hospital,* 86 S.D. 361, 364, 195 N.W.2d 519, 520 (1972):
>
> > The function of Rule 56 is to provide a procedural device for promptly disposing of actions in which there are no genuine issues of material facts. "To attain this end, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, answers to interrogatories, and admissions on file show that there are no general issues of material fact to be tried." ... To allow formal denials and conclusory pleadings to raise genuine issues against uncontradicted facts would nullify the utility of the rule.

*Western Casualty & Sur. Co. v. Gridley,* 362 N.W.2d 100, 102–03 (S.D.1985). *See also* SDCL 15–6–56(e).[3]

Miessner failed to "set forth specific facts" but rather provided "mere allegations" that Defendants fabricated false evidence and gave false and malicious testimony. Therefore, he has failed to show the absence of probable cause for the charges of embezzlement and larceny and summary judgment was proper.

### (3) Wyoming Forgery and Theft

■ Miessner also argues that Rudge and Weideman attempted to cause a prosecution against him for forgery and theft in Wyoming. According to his complaint, these charges were not prosecuted but they did cause him to lose his Wyoming license. A review of the Stipulation entered into between the Wyoming Insurance Department, Frontier, and Miessner, however, reveals that the misappropriation of funds held in Frontier's trust account by Miessner and his failure to contest the allegation that he had, without any authority, forged Rudge's signature on a check for $20,000.00, caused him to lose his Wyoming license.

Miessner has not shown a genuine issue of material fact and summary judgment was appropriate.

## 2. DEFAMATION

■ Miessner argues that the trial court erred in determining that there was no genuine issue of material fact as to defamation. According to Miessner's complaint, Rudge and Weideman, individually and as employees of All Dakota, published false statements to third parties that Miessner was not trustworthy and was a criminal. It is not clear from Miessner's complaint whether he is alleging slander or libel. This distinction is not critical, however, because both libel and slander require that Miessner prove that the

---

**3.** SDCL 15–6–56(e) provides:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in § 15–6–56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15–6–56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Defendants made a "false and unprivileged publication." SDCL 20–11–3; SDCL 20–11–4.

The South Dakota Director of Insurance concluded that Miessner "has violated applicable provisions of the insurance laws of South Dakota, has misappropriated and converted to his own use, money belonging to Titan Indemnity Company, has used dishonest practices and has shown himself to be untrustworthy." Miessner did not appeal this decision. Miessner entered a guilty plea to a felony charge of embezzlement in United States District Court thereby admitting to the commission of a criminal act.

Therefore, in view of these proceedings, Miessner cannot establish that the statements allegedly made by Defendants were false. Miessner has failed to set forth specific facts which create a genuine issue of material fact as to whether Defendants falsely accused him of being untrustworthy and a criminal. Summary judgment was proper.

### 3. ABUSE OF PROCESS

■ Miessner argues that the trial court erred in granting Defendants' motion for summary judgment on his abuse of process claim. This court explained in great detail the tort of abuse of process in *Brishky.*

> The definition of abuse of process can be found in the Restatement (Second) of Torts § 682 (1977):
>
>> One who uses a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.
>
> We have previously adopted 682 of the first edition of the Restatement of Torts. *Layton v. Chase,* 82 S.D. 270, 144 N.W.2d 561 (1966). Now, we adopt section 682, and comments a and b of the Restatement (Second) of Torts. The Restatement (Second) of Torts section 682 is identical to the Restatement of Torts section 682 in all respects except for the addition of the word "primarily" in the second edition. This revision narrows the claim of abuse of process as explained in new comment b:

> b. "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant ... For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some action or refrain from it.

> An additional commentary in the Restatement (Second) of Torts, section 682 app., attempted to clarify the essence of abuse of process:

>> Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions.

> Other jurisdictions have defined abuse of process in great detail. It appears the general consensus is that the two elements of the tort are (1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Friedman v. Dozorc,* 412 Mich. 1, 312 N.W.2d 585 (1981); *see Strid v. Converse,* 111 Wis.2d 418, 331 N.W.2d 350 (1983).

479 N.W.2d at 493–94. *See,* Keeton, Prosser and Keeton on the Law of Torts § 121, at 897–98 ("[I]f the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process."). Applying these principles to the record before us indicates that summary judgment was proper.

Miessner alleges in his complaint that Defendants' actions were taken for the purpose of extorting money from him and compelling the surrender of his business interests. In support of this allegation, Miessner offers his

affidavit which states that Rudge and All Dakota tried to extort money from him under the threat of prosecution and an agreement, allegedly authored by Rudge, detailing the terms of the extortion.

In *Packard v. Central Maine Power Co.,* 477 A.2d 264 (Me.1984), plaintiff argued in support of his abuse of process claim that the evidence showed defendant initiated the criminal complaint only after he had refused to pay for the electricity defendant claimed he had stolen. The trial court found for defendant and the Maine Supreme Court affirmed, stating that abuse of process "differs from malicious prosecution in that it lies for the improper use of process *after it has been issued, not for maliciously causing process to issue.*" 477 A.2d at 267 (emphasis added) (citation omitted). *See,* Keeton, Prosser and Keeton on the Law of Torts § 121, at 897 ("Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, *once it is issued,* is the only thing of importance." (emphasis added)).

Viewing the evidence in the light most favorable to Miessner, Defendants attempted to induce Miessner, under the threat of criminal prosecution, to relinquish his rights in All Dakota. According to Miessner, they released the damaging information to the authorities when their alleged attempt at coercion failed. Even if Miessner had proven Defendants acted wrongfully in reporting the matters to law enforcement officials, such evidence is not relevant to an allegation of abuse of process because this does not constitute "the improper use of process after it has been issued." *Packard,* 477 A.2d at 267. While there may have been an incidental motive of spite, the process was used for the purpose for which it was intended. While these acts may amount to malicious prosecution, they do not constitute abuse of process. Therefore, the trial court's grant of summary judgment as to abuse of process is affirmed.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and HENDERSON, JJ., concur in result.

WUEST, Justice (concurring in result).

I concur in result.

HENDERSON, Justice (concurring in result).

I concur with the majority opinion on the affirmance of the trial court's rulings on summary judgment. However, I wish to elaborate that the commencement (or non-commencement) of a judicial proceeding is *not* a question of fact to be determined by a jury; it is a matter of law, a decision left to the judicial tribunal. *See Jackson v. District of Columbia,* 710 F.Supp. 13 (D.D.C.1989); *Miami Herald Pub. Co. v. Ferre,* 636 F.Supp. 970 (S.D.Fla.1985). It glaringly appears that no judicial proceeding was instituted. There was no prosecution for forgery.

A question of fact is for the jury. *Bogh v. Beadles,* 79 S.D. 23, 107 N.W.2d 342 (1961). A question of law is for the trial court to determine. *In re SDDS,* 472 N.W.2d 502, 507 (S.D.1991). Therefore, I am not in accord with the *ratio decidendi* of the majority opinion.