**SPECIALTY MILLS, INC., Hesco, Inc., and Bruce C. Hestad, Plaintiffs and Appellants,**

v.

**CITIZENS STATE BANK, Defendant and Appellee.**

No. 19607.

Supreme Court of South Dakota.

Argued Dec. 4, 1996.

Decided Feb. 5, 1997.

 .

Bruce M. Ford of Burns & Ford, Sioux Falls and Jonathan K. Van Patten, Vermillion, for plaintiffs and appellants.

Lee A. Magnuson of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for defendant and appellee.

SABERS, Justice.

[¶ 1] Bank successfully moved bankruptcy court to issue notice that automatic stay was in effect in debtor's pending bankruptcy proceedings. Notice was issued to Specialty Mills, Inc., (SMI), a non-creditor. SMI sought to remove its property from debtor's premises. SMI sued, claiming the Bank's actions amounted to malicious prosecution, abuse of process, intentional interference with contract, and tortious interference with business relationships. Bank counterclaimed for unpaid rents and for cleaning charges. Summary judgment was granted in Bank's favor on all claims. SMI appeals and we affirm.

## FACTS

[¶ 2] SMI is a South Dakota corporation created to produce specialty grains, such as those used in racehorse feed and distillation of alcoholic beverages. Its principal shareholder is Bruce Hestad, who also owns and operates another South Dakota corporation, Hesco, Inc. (Hesco). Hesco is a broker for the sale of these specialized grains. Other shareholders were Dakota Oat (DO), which contributed mill machinery and equipment, and Illinois Cereal, Inc., which made a capital investment.

[¶ 3] SMI leased part of a building belonging to DO in Arlington, South Dakota to begin grain production. DO contributed machinery and equipment already on the premises in exchange for SMI stock; additional equipment was installed by SMI. The real property was subject to a first mortgage held by Bank, and a second mortgage by the Small Business Administration (SBA). SMI's financing of this venture, and therefore the execution of the lease, was contingent upon Bank and SBA relinquishing their security interests in the machinery and equipment traded by DO; both Bank and SBA disclaimed their security interests and agreed to treat the items as SMI's personal property rather than as fixtures of the real property. In return, Bank received from DO an assignment of all rents paid by SMI.

[¶ 4] DO filed for bankruptcy in July of 1991, approximately two years after the lease was executed. Pursuant to a sixty-day notice provision, on April 28, 1992, SMI gave notice of its intent to terminate the lease. Toward the end of the sixty-day notice period, Bank moved the bankruptcy court to issue notice of the automatic stay[1] to SMI.[2] In its motion, Bank pointed out the lease provision

---

1. The "automatic stay" refers to 11 USC § 362, a Bankruptcy Code provision which is effective upon the filing of a bankruptcy petition, and "is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor or a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." HRRep No. 595, 95th Cong., 1st Sess. 340 (1978), *reprinted in* 1978 USCCAN 5787, 6296–97. The implications of the automatic stay are discussed in detail *infra* at ¶¶ 15–17.

2. When DO filed for bankruptcy, one of its duties was to compile a list of its creditors, who then received formal notice of the filing of DO's bankruptcy petition. *See* 11 USC § 521(1). SMI was not a creditor and did not appear on this list or receive notice from the bankruptcy court; however, the automatic stay was applicable to SMI even in the absence of formal notice. *See* 11

USC § 362(a) (providing that stay applies to all entities); *In re O'Connor,* 42 B.R. 390, 392 (Bankr.E.D.Ark.1984) (stating that the stay is effective upon date of filing regardless of whether there has been formal service or notice of the filing); *In re Boston Business Machs.,* 87 B.R. 867, 871 (Bankr.E.D.Pa.1988) ("[K]nowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay[.]"); *see also O'Connor,* 42 B.R. at 393 (noting that 11 USC § 362(h) authorizes recovery of compensatory damages, costs, and attorney's fees for violation of the automatic stay). When the entity violating the automatic stay has knowledge of the stay, the violation is willful. *Id.* at 392. A willful violation may support an award of punitive damages. 11 USC § 362(h); *In re Stucka,* 77 B.R. 777, 784 (Bankr. C.D.Cal.1987).

which permitted SMI to remove its personal property upon termination of the lease, but prevented the removal of items added by SMI which were of a "permanent nature." Bank claimed the property was subject to the protection of the automatic stay, and the court agreed.

[¶ 5] SMI responded with a motion to determine the applicability of the automatic stay to the property. The court concluded the stay applied to the property and the lease. SMI next made a motion for reconsideration and alternatively, a motion for relief from the stay. Following the hearing on those motions, the court issued an "Order Modifying Stay" which allowed SMI to remove its machinery and equipment; however, the court granted Bank a priority lien in the property as security for any necessary repair or clean-up costs incidental to removal, and for any rents still owed under the lease.

[¶ 6] Hestad, SMI, and Hesco sued Bank in state court; the complaint stated five causes of action against Bank with regard to its actions in the bankruptcy proceedings. Bank responded with a counterclaim for $9,000.00 in rents due under the lease assignment, and for $2,140.09 owed by SMI to DO.[3] Bank removed the action to bankruptcy court, and it was transferred to federal district court as the bankruptcy court does not conduct jury trials. Summary judgment was granted to Bank on all claims and counterclaims. SMI appealed to the United States Eighth Circuit Court of Appeals, which reversed the district court for lack of federal jurisdiction and remanded the case to state court. *Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770 (8th Cir.1995). Summary judgment was again granted to Bank on all claims and counterclaims and SMI appeals.

## STANDARD OF REVIEW

[¶ 7] Our standard of review for summary judgment is well-established:

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any

genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Lamp v. First Nat'l Bank of Garretson,* 496 N.W.2d 581, 583 (S.D.1993) (citation omitted). "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law[.]" *State, Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D. 1989) (citation omitted).

## [¶ 8] 1. MALICIOUS PROSECUTION

[¶ 9] SMI argues that Bank's motion to the bankruptcy court, requesting that notice of the automatic stay in DO's bankruptcy proceedings be issued, amounted to "malicious prosecution." "A malicious prosecution is one that is begun in malice, without probable cause to believe it can succeed, and which finally ends in failure." *Kunz v. Johnson,* 74 S.D. 577, 582, 57 N.W.2d 116, 119 (1953) (citation omitted). To successfully maintain an action for malicious prosecution, the plaintiff must prove six elements:

1. The commencement or continuance of an original criminal or civil judicial proceeding;

2. its legal causation by the present defendant against plaintiff, who was defendant in the original proceeding;

3. its bona fide termination in favor of the present plaintiff;

4. the absence of probable cause for such proceeding;

5. the presence of malice; and

---

**3.** Bank and DO reached a settlement during the bankruptcy proceedings; part of that agreement included the assignment of certain accounts receivable, including the amount owed by SMI.

6. damages conforming to legal standards resulting to plaintiff.

*Miessner v. All Dakota Ins. Assocs., Inc.,* 515 N.W.2d 198, 200 (S.D.1994) (citations omitted).

■ [¶ 10] Bank argues that its motion to the bankruptcy court, the hearings it prompted, and the issuance of notice of the automatic stay did not constitute a "judicial proceeding." We disagree. "Judicial proceeding" is defined, in part, as:

> Any proceeding wherein judicial action is invoked and taken. Any proceeding to obtain such remedy as the law allows.... A general term for proceedings relating to, practiced in, or proceeding from, a court of justice.... A proceeding wherein there are parties, who have opportunity to be heard, and wherein the tribunal proceeds either to a determination of facts upon evidence or of law upon proved or conceded facts.

*Black's Law Dictionary* 849 (6th ed. 1990) (citation omitted). Compare *Gregory's, Inc. v. Haan,* 1996 SD 35, 545 N.W.2d 488, where we concluded that the filing of a mechanic's lien is "ancillary" to judicial action, but not a "judicial proceeding" since it is simply a prerequisite to a lien foreclosure. *Id.* at ¶ 13, 545 N.W.2d at 493–94 (noting also that a lawsuit does not necessarily follow from the filing of a lien).

■ [¶ 11] The next element requires that the present defendant, Bank, brought about the judicial proceeding against the present plaintiff, SMI, who must have been the defendant in the original proceeding. Bank also disputes SMI's status as defendant, but does so in conclusory terms without supporting argument or authorities. Again, we disagree; "defendant" is defined, in part, as "the party against whom relief or recovery is sought in an action or suit[.]" *Black's, supra* at 419. SMI points out that the purpose, and the result, of the motion was to have the bankruptcy court issue notice to SMI, and no other party, regarding the automatic stay. "Under proper circumstances, a person may be subjected to liability for malicious prosecution for having instituted earlier unsuccessful bankruptcy ... proceedings against (*or involving* ) the present plaintiff."

Stuart M. Speiser et al., *The American Law of Torts* § 28:26, at 157 (emphasis added). *Cf. Balsiger v. American Steel & Supply Co.,* 254 Or. 204, 458 P.2d 932, 933 (1969) (extending remedy to bankruptcy proceedings because of the interference with property interest); *Hubbard v. Beatty & Hyde, Inc.,* 343 Mass. 258, 178 N.E.2d 485, 487 (1961) (holding that one against whom bankruptcy proceedings have been improperly instituted may maintain cause of action for malicious prosecution). *See also* W. Page Keeton et al., *Prosser and Keeton on Torts* § 120, at 890–91 (5th ed. 1984) (collecting cases and noting the extension of the remedy to proceedings in which there was interference with property or business).

■ [¶ 12] The third element SMI must prove is "bona fide termination" in its favor. *Miessner,* 515 N.W.2d at 200. The fact the bankruptcy court issued the notice, as requested by Bank, is not determinative of this issue because it was issued ex parte. *See Keeton et al.* § 120, at 892:

> Ordinarily the plaintiff must prove the termination of the former proceeding in his favor. But there are necessary exceptions where ... the proceeding is an ex parte one and relief is granted without an opportunity for the party against whom it is sought to be heard.... It usually is held, however, ... that if an opportunity has been given to contest the facts, the plaintiff must show a favorable termination of the ancillary proceeding itself.

Therefore, SMI must prove favorable termination of the hearings which followed Bank's initial motion. Favorable termination " 'is a question of law normally to be determined by the trial court, as it requires the court to draw a conclusion based upon its legal judgment as to the significance of the prior judgment in light of the relief requested.' " *Schwartz v. First Nat'l Bank in Sioux Falls,* 390 N.W.2d 568, 571 (S.D.1986) (citing *Brown v. Carr,* 503 A.2d 1241, 1245 (D.C.1986) (quoting *Weisman v. Middleton,* 390 A.2d 996, 1003 (D.C.1978))). Questions of law are reviewed de novo. *In re Petrik,* 1996 SD 24, ¶ 10, 544 N.W.2d 388, 390 (citations omitted).

[¶ 13] The underlying theory of SMI's claim is that the bankruptcy court was litigating the issue of ownership with regard to the property SMI sought to remove. In its motion, Bank informed the court that SMI had given notice to terminate its lease with debtor DO, and included a lease provision which stated SMI was not permitted to remove improvements of a permanent nature. Bank also pointed out, "In addition, South Dakota law may give the owner of real property an interest in certain property affixed to the property by a tenant." (Citing SDCL ch. 43–33 "Fixtures to Land"). SMI argues that Bank was putting ownership of the property at issue by including the lease provision or by referencing South Dakota law on fixtures to real property. By making ownership the issue, SMI argues Bank was able to delay the removal of the equipment and machinery and collect additional rent. Because SMI was ultimately allowed to take possession of the machinery and equipment, SMI argues termination was favorable to it.

[¶ 14] Bank, on the other hand, argues that the question presented to the bankruptcy court was simply whether the automatic stay applied to the property. The court held that the stay did apply, but ultimately modified the stay to allow SMI to remove its property. The removal of the property was conditioned on Bank receiving a priority lien in the machinery and equipment. Bank argues that because this order "generally favored all parties and specifically and substantially benefited [Bank]," there was no "favorable termination" for SMI.

[¶ 15] Regardless of where title to the machinery and equipment properly belonged, the automatic stay applied; SMI was therefore prohibited from removing it without first seeking permission from the bankruptcy court.[4] 11 USC § 362(a)(3) provides, in relevant part:

> [A bankruptcy] petition ... operates as a stay, applicable to *all* entities, of—
>
> . . . . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

(Emphasis added). Property "from" the estate refers to property in possession of the estate. *See 2 Collier on Bankruptcy,* § 362.03[5], at 362–19 (Lawrence P. King, ed., 1995). "The automatic stay is a basic protection afforded debtors under the bankruptcy laws, and its scope is intended to be broad." *In re Abrams,* 127 B.R. 239, 241 (9th Cir. BAP 1991) (citations omitted).

> At the same time that a bankruptcy petition is filed, an automatic stay arises pursuant to 11 USC § 362(a). A primary purpose of the automatic stay provision is to afford debtors ... an opportunity to continue their businesses with their available assets. The automatic stay is specifically designed to afford debtor a "breathing spell" free from actions by creditors against the debtor's estate.

*In re National Cattle Congress, Inc.,* 179 B.R. 588, 592 (Bankr.N.D.Iowa 1995) (citations omitted).

[¶ 16] Parties seeking relief from the automatic stay must approach the bankruptcy court in accordance with 11 USC § 362(d):

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> . . . . .
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
> > (A) the debtor does not have an equity in such property[.]

It is clear from the language ("the court *shall* grant relief") of the statute that the court was obligated to alter the stay in some way *if* it determined DO had no equity in the machinery and equipment; however, the court was not obligated to lift the stay in the absence of a request from "a party in inter-

---

4. Furthermore, Bank set the stage for a punitive damages award by requesting official notice of the stay be given to SMI. *See supra* note 2.

est."[5] Therefore, SMI's claim that the proceedings were prolonged[6] because Bank led the bankruptcy court to believe the property in question might be "of" rather than "from" the estate is without merit. A determination of ownership was part and parcel of the court's decision that the stay applied, as well as its subsequent order modifying the stay.

[¶ 17] We agree with Bank that the only question before the bankruptcy court was whether the automatic stay was applicable. The ownership issue was a part of that determination. SMI initially asserted the stay did not apply. For Bank to raise "the ownership issue" to the bankruptcy court does not constitute malicious prosecution any more than SMI's assertion of "inapplicability of the stay" in that court. Arguably, undue emphasis may have been placed on both incorrect theories, but we cannot say that either constitutes malicious prosecution under these circumstances.[7] We also agree that the modification of the stay "generally favored all parties and specifically and substantially benefited [Bank]," such that there was no termination in favor of SMI.

[¶ 18] Because SMI failed to prove one of the six elements necessary to maintain a cause of action for malicious prosecution, summary judgment was properly granted on this issue. *Miessner*, 515 N.W.2d at 200; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986) (stating that summary judgment is appropriate when the plaintiff fails to make a sufficient showing of the existence of an element essential to that party's case).

## [¶ 19] 2. ABUSE OF PROCESS

 [¶ 20] Alternatively, SMI argues that the record supports an action for "abuse of process."

> Abuse of process consists of the malicious misuse or misapplication of legal process *after its issuance* to accomplish some collateral purpose not warranted or properly attainable thereby.
>
> . . . .
>
> It differs from malicious prosecution in that it is not necessary to show that the action in which the process was used was without probable cause or that it terminated favorably to the plaintiff.

*Layton v. Chase*, 82 S.D. 270, 274, 144 N.W.2d 561, 563 (1966) (emphasis added) (citations omitted). The essential elements of this cause of action are 1) an ulterior purpose, and 2) an act in the use of process which is improper in the regular prosecution of the proceeding. *Miessner*, 515 N.W.2d at 204 (quoting *Brishky v. State*, 479 N.W.2d 489, 494 (S.D.1991)); *Layton*, 82 S.D. at 274,

---

5. SMI could have requested relief from the automatic stay as early as April 28, 1992, the date it gave notice of intent to terminate the lease. The bankruptcy court gave notice of the automatic stay on June 8, 1992, the same day Bank filed its motion. SMI's first response was a motion for determination of inapplicability of the stay, filed on June 12. It was not until June 17 that SMI sought relief from the stay. Therefore, the delay experienced by SMI in removing its property was avoidable.

6. At oral argument, SMI stated that the transcript from the first hearing was 144 pages long; this may or may not be true—SMI failed to file a transcript with this court. On its own motion, the bankruptcy court raised the issue of whether termination of the lease was itself a violation of the automatic stay. It is possible that time expended resolving that question contributed to the length of the hearing or that ownership became a key issue because of SMI's position that the stay did not apply to the removal of its property. The appellant's burden cannot be met without the

transcript. *See Baltodano v. North Cent. Health Serv., Inc.*, 508 N.W.2d 892, 894–95 (S.D.1993):

> [T]he ultimate responsibility for presenting an adequate record on appeal falls upon the appellant. Failure to timely order a transcript constitutes a waiver of the right to a transcript. Where an appellant waives the right to a transcript by failing to order it, the only review which can take place is a review of that portion of the record which was before the circuit court. Where the record contains no transcript, the record on appeal is confined to those pleadings and papers transmitted from the circuit court.
> . . . .
> When confronted with incomplete records, our presumption is that the circuit court acted properly.

(Citations and internal quotations omitted).

7. The record does not disclose the amount of time spent on either issue because, as noted *supra* at note 6, SMI failed to file a transcript of the hearing.

144 N.W.2d at 563.[8]

[¶ 21] SMI asserts two bases for an ulterior purpose: First, it argues that Bank "sought to obtain an interest in the machinery and equipment [of SMI] by virtue of its status as a creditor with a security interest in the property of the debtor." Even if that were Bank's motive, that is not "an act in the use of process which is improper in the regular prosecution of the proceeding." *Miessner*, 515 N.W.2d at 204. To insure that a party's interest is adequately protected, the bankruptcy court is statutorily authorized to grant an additional or replacement lien under 11 USC § 361(2).

[¶ 22] SMI next argues Bank was attempting to make it impossible or impractical for SMI to terminate the lease because 1) such termination would deprive Bank, as assignee, of substantial income from the monthly rental payment, and 2) the delay placed economic pressure on SMI because it would be unable to operate without its equipment; SMI claims the potential for a "more favorable settlement of the entire matter was increased by the infliction of economic harm on [SMI]." Since SMI already gave notice of its intent to terminate the lease, Bank could not prevent that action. In addition, SMI was required to obtain relief from the automatic stay even in the absence of Bank's motion.[9] It is unclear what "settlement" SMI refers to—there is no provision for waiver of 11 USC § 362, so Bank could not force SMI to buy its way out from under the automatic stay. *Cf. Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2nd Cir.1986) (per curiam) ("Since the purpose of the stay is to protect creditors as well as the debtor, the debtor may not waive the automatic stay."); *accord In re Best Finance Corp.*, 74 B.R. 243, 245 (Bankr.D.P.R.1987) (adding that purpose of automatic stay includes the orderly and efficient administration of the bankruptcy estate).

[¶ 23] As indicated above, SMI did not supply a transcript; nor has it shown either element of abuse of process. *Miessner*, 515 N.W.2d at 204. Bank had a right to attempt to protect its interest and there is no showing that it proceeded improperly. Therefore, summary judgment was properly granted on this issue. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

## [¶ 24] 3. BANK'S COUNTERCLAIM FOR CLEANING CHARGES

[¶ 25] With the approval of the bankruptcy court, DO and Bank entered into a settlement agreement where Bank took assignment of the SMI lease and rent due under that lease. Bank's counterclaim included a

---

**8.** This court has previously explained the tort of abuse of process in detail:

> The definition of abuse of process can be found in the Restatement (Second) of Torts § 682 (1977):
>> One who uses a legal process whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.
> We have previously adopted 682 of the first edition of the Restatement of Torts. *Layton v. Chase*, 82 S.D. 270, 144 N.W.2d 561 (1966). Now, we adopt section 682, and comments a and b of the Restatement (Second) of Torts. The Restatement (Second) of Torts section 682 is identical to the Restatement of Torts section 682 in all respects except for the addition of the word "primarily" in the second edition. This revision narrows the claim of abuse of process as explained in new comment b:
>> b. "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is

an incidental motive of spite or an ulterior purpose of benefit to the defendant ... For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some action or refrain from it. An additional commentary in the Restatement (Second) of Torts, section 682 app., attempted to clarify the essence of abuse of process:
>> Some act or threat directed to an immediate objective not legitimate in the use of the process is required, and the defendant is not liable if he has done no more than carry the process to its authorized conclusion, even with bad intentions.
> *Miessner*, 515 N.W.2d at 204 (citing *Brishky*, 479 N.W.2d at 493–94).

**9.** We note again that an earlier request by SMI for relief from the automatic stay may have avoided the delay. *See* note 5, *supra*.

claim for unpaid rent, and SMI conceded that it owed $9,000.00 for unpaid rent. SMI did not appeal the grant of summary judgment to Bank for $9,000.00 plus interest.

[¶ 26] The settlement agreement also transferred DO's accounts receivable to Bank. According to Bank, $2,140.09 is owed by SMI pursuant to that assignment. The trial court granted summary judgment in Bank's favor for that amount, plus interest, for a total of $3,160.44. SMI argues that Bank's affidavits in support of summary judgment on this claim were conclusory and simply reiterated that cleaning charges were due and owed to Bank via the assignment; however, in the absence of a timely challenge, that is adequate. SMI did not dispute this counterclaim by affidavit until February 14, 1996—over a month after Circuit Court Judge Erickson wrote counsel granting summary judgment.

[¶ 27] SMI argues that it preserved denial of this debt in its pleadings. Reliance on pleadings alone is not enough to overcome summary judgment:

When this court considers a motion for summary judgment, however, the formal issues presented by the pleadings are not controlling and a party may not rest upon the mere allegations contained therein. The nonmoving party must present specific facts which demonstrate a genuine, material issue for trial. Allegations which do not set forth specific facts will not prevent the issuance of a summary judgment.

*Laber v. Koch*, 383 N.W.2d 490, 492 (S.D. 1986) (citations and internal quotations omitted); *see also* SDCL 15-6-56(e) ("When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."). We affirm this issue.

[¶ 28] SMI also claims that Bank's conduct constituted "intentional interference with contract" and "tortious interference with business relationships." As indicated above, Bank had a right to attempt to protect its interests. Therefore, SMI has not shown the necessary elements of either cause of action and we affirm.

[¶ 29] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.