2004 SD 89

**JERAULD COUNTY, a political subdivision, Plaintiff and Appellant,**

v.

**HURON REGIONAL MEDICAL CENTER, INC., Defendant and Appellee.**

No. 22864.

Supreme Court of South Dakota.

Considered on Briefs Feb. 17, 2004.

Decided July 14, 2004.

Rehearing Denied Aug. 20, 2004.

Casey N. Bridgman, Jerauld County State's Attorney, Wessington Springs, South Dakota, Attorneys for plaintiff and appellant.

Rodney Freeman, Jr. of Churchill, Manolis, Freeman, Kludt & Shelton Huron, South Dakota, Attorney for defendant and appellee.

[¶ 1.] Justice RICHARD W. SABERS delivers the majority writing of the Court on Issue 1, which holds that the trial court did not err in determining that HRMC was entitled to summary judgment as to Article 16 § 16.06 of the lease agreement.

[¶ 2.] Justice STEVEN L. ZINTER delivers the majority opinion of the Court on Issue 2, which holds that the trial court did not err in determining that HRMC could reject County's offer to purchase equipment because the offer did not comply with Article 10 § 10.04(a) of the lease.

[¶ 3.] SABERS, Justice, writing the majority opinion on Issue 1.

[¶ 4.] Jerauld County appeals the trial court's grant of Huron Regional Medical Center's (HRMC) motion for summary judgment. County raises two issues on appeal: 1) whether HRMC was entitled to summary judgment as to Article 16 § 16.06 of the lease agreement; and 2) whether HRMC was entitled to summary judgment determining that County's offer to purchase equipment failed to comply with Article 10 § 10.04(a) of the lease.

## FACTS

[¶ 5.] Jerauld County owns the Weskota Memorial Medical Center in Wessington Springs (Weskota or Hospital). In 1986, County and HRMC entered into a written agreement whereby HRMC would lease the hospital from County. HRMC would then be responsible for operating the hospital.

[¶ 6.] In July 1997, the president of HRMC began a grant application process with the Fannie E. Rippel Foundation (Foundation). HRMC was pursuing the grant from the foundation in order to obtain two in-house stationary mammography units. In June 1998, HRMC was notified that the grant was approved. The grant gave $116,000 toward the purchase of two mammography units and was contingent upon HRMC contributing $15,000 toward the cost of each unit. The units were to be placed at Weskota and De Smet Memorial Hospital. The only unit at issue in this case is the one at Weskota.

[¶ 7.] One of the provisions of the agreement between HRMC and County entitled either party to terminate the lease after three years, provided they gave 180 days written notice. In late 1999, County provided notice that it intended to terminate the lease. After providing notice, County informed HRMC that it believed the mammography unit at Hospital belonged to County under the terms of the lease agreement. County offered to purchase the unit for $15,000, the amount HRMC spent above the grant, for purchase of the unit. HRMC rejected the offer.

[¶ 8.] County filed a motion for an order to show cause. The circuit judge denied County's request for delivery and possession of the unit and gave HRMC the right to retain use and possession of the unit while this matter was pending.

HRMC made a motion for summary judgment which the court granted. County appeals, raising two issues:

1. Whether HRMC was entitled to summary judgment as to Article 16 § 16.06 of the lease agreement.
2. Whether HRMC was entitled to summary judgment determining that County's offer to purchase the equipment failed to comply with Article 10 § 10.04(a) of the lease agreement.

## STANDARD OF REVIEW

[¶ 9.] Our standard of review on summary judgment is well-settled. In *Thiewes,* we noted the guiding principles in determining whether a grant or denial of summary judgment is appropriate:

(1) The evidence must be viewed most favorable to the nonmoving party; (2) The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (3) Though the purpose of the rule is to secure a just, speedy and inexpensive determination of the action, it was never intended to be used as a substitute for a court trial or for a trial by jury where any genuine issue of material fact exists; (4) A surmise that a party will not prevail upon trial is not sufficient basis to grant the motion on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious it would be futile to try them; (5) Summary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant; and (6) Where, however, no genuine issue of fact exists it is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

State, *Dept. of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D.1989) (citing *Wilson v. Great Northern Railway Company,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968)).

[¶ 10.] **1. WHETHER HRMC WAS ENTITLED TO SUMMARY JUDGMENT AS TO ARTICLE 16 § 16.06 OF THE LEASE AGREEMENT.**

[¶ 11.] In its memorandum opinion, the trial court stated:

Both parties agree that:

1. The interpretation of a contract is a matter of law for the court to decide.
2. Article 16 § 16.06 of the contract is unambiguous.
3. HRMC applied for and received the mammography unit as part of a grant from the Foundation.
4. The grant does not contain a specific stipulation, restriction or direction other than that the money must be used to purchase the mammography unit.
5. County conceded that HRMC "could do whatever it wanted with the machines."
6. HRMC used the grant money to purchase and place a mammography unit at Hospital.

County contends that several of the forgoing facts were not agreed upon and that they are genuine issues of material fact that a jury must decide. Therefore, County maintains that the trial court erred in using these facts to support its decision.

[¶ 12.] The parties did agree that the interpretation of the contract was a matter of law for the court to decide and that Article 16 § 16.06 of the contract was unambiguous.

[¶ 13.] County argues that while it is true that HRMC applied for a grant from Foundation, the court erred in "finding" that HRMC received the unit as part of

the grant. County contends that the evidence viewed in favor of County does not support the finding and instead, Hospital actually received the unit. In other words, County is arguing that the grant was given for the benefit of the hospital itself rather than HRMC.

[¶ 14.] If Hospital, rather than HRMC, "received" (or was given) the unit, County asserts that under Article 16 § 16.06 of the lease, the unit belonged to County once it was placed at Hospital.

■ [¶ 15.] Article 16 § 16.06 provides:

*Gifts.* It is further understood and agreed by both parties hereto that if after the execution of the agreement an individual or group of individuals, or an organization or a group of organizations desire to contribute to the Hospital any sum of money for the purchase of equipment or other articles to be used in and specifically designated as a contribution for the above-described Hospital, either as a memorial or other contribution, HRMC may accept such gifts, it being understood, however, that HRMC shall comply with the wishes of the donor, and that all items purchased with such gifts by HRMC, be and remain a part of the Hospital and the property of the County, except that should the terms or conditions of the gift, bequest, contribution or grant contain specific stipulations, restrictions or directions and wishes pertaining to the gift or the use thereof, then and in that event the terms, instructions and wishes of the donor will be strictly complied with.

In order to find that County acquired ownership of the unit, this provision requires:

1. That Foundation desired to contribute money to Hospital for the purchase of the unit.

2. That this desire arose after execution of the lease between HRMC and County.

3. That the unit purchased with the contribution was "to be used in and specifically designated as a contribution for [Hospital]."

At the hearing on the motion for summary judgment, County conceded that there was nothing in the grant indicating the contribution was "specifically designated as a contribution for [Hospital]" in the following exchange:

County: So by saying it's Huron's to do whatever they want to with it, [the foundation was] putting no restrictions [] on it. They were saying Huron could submit that under this lease provision to go to the County once the County terminated this lease. There was no restriction[] that this had to stay with [HRMC].

Court: But there was no restriction that it had to stay [at Hospital] either.

County: That's true. It was to be placed at [Hospital]. And the fact that it was placed there and the grant was for the purposes of that hospital lease is what we're saying. It says that machine should stay with [Hospital].

It appears that County conceded that the grant was not specifically designated for Hospital. County asserts that since there was not a specific requirement in the grant that the unit remain with HRMC, the unit belongs to the hospital pursuant to Article 16 § 16.06. There are at least three difficulties with this argument.

[¶ 16.] First, this Court has no way of determining what the provisions of the grant were as it was not made a part of the settled record.

[¶ 17.] Second, the lease provision requires that Foundation desired to contrib-

ute the funds *to* Hospital. The only evidence in the settled record with regard to Foundation's intent is a letter written by its CEO, Edward Probert. The letter provides in part:

Dear Mr. Single:

You have asked us to clarify our position with regard to the two mammography units which were purchased with funds provided by the Foundation's $150,000 grant appropriated on June 16, 1998, *to Huron Regional Medical Center.*

All our discussions prior to the award of this grant were held with Huron, and, though the grant terms mention the mammography units would be placed at Weskota and DeSmet hospitals, the units were to be selected and purchased at Huron's discretion. Further, the fourth term of the grant clearly states that Huron must certify that it has "... purchased and taken title to two in-house stationary mammography units ..." Thus, *it has always been our understanding that these units would remain the property of Huron during their useful life, regardless of their physical location.*

(Emphasis supplied.) There is nothing in the record other than assertions by County to support a finding that the grant was given to Hospital.

[¶ 18.] Third, the lease provision requires that the contribution be specifically designated *for the hospital* in order for the gift to "be and remain a part of the Hospital and the property of the County." If the grant was in the record, and it could be established that, as County asserts, there was no provision stating that the unit was contributed to HRMC, we may have been able to infer that the funds were contributed to Hospital. However, the grant is not in the settled record and it would be inappropriate to draw inferences not based on any fact in the record.

[¶ 19.] County argues that the fact that the unit was *placed* at Hospital is sufficient under the lease provisions to vest ownership of the unit in County. The terms of Article 16 § 16.06 of the lease agreement do not support this assertion. As a matter of law, this provision does not vest ownership of the unit in County unless the gift was contributed to and designated for the Hospital. However, that does not exclude County's legal right under other provisions of the lease to purchase the unit as discussed in Issue 2.

[¶ 20.] County asserts that 1) the "grant requirements could not be clearer ... the grant was for purchasing and placing the [] unit []at [Hospital];" and 2) Probert testified in his deposition that "the original terms were that the machines were going to be placed at [] [Hospital]." [1]

1. Although this is not relevant to our determination, we point out that these excerpted portions of Probert's testimony are misleading to the extent that they imply that the grant was given to or solely for the benefit of Hospital. The thrust of his testimony was that the contribution was given to the HRMC network and that the purpose of the grant was fulfilled by HRMC using the unit within its network. He testified in part:

[T]he critical fact from [the Foundation's] standpoint was [] the fact that it was part of a network and we felt that the usage of the machines would be such that it would result in a significant health benefit to the

people in the community—in the communities that were being served. [] So where the machines were actually to be placed was not as important to us as was the network nature and the fact that [HRMC], itself, was going to be committing some of its own funds.

Probert also testified in his deposition that had HRMC not been part of a network and not involved with other institutions and "did not command a significant service area," he "would be very doubtful that a grant would have been approved." Finally, he testified that he was unaware that the Foundation had ever made a grant to a political subdivision,

We cannot ascertain whether these assertions are supported because the record does not contain the grant. Furthermore, while Probert's deposition is appended to HRMC's brief, it has not been made a part of the settled record by either party.

[¶ 21.] The next "finding" the County takes issue with is the court's statement that the parties agreed that the grant did not contain a specific stipulation, restriction or direction other than that the money must be used to purchase the mammography unit. County asserts "the record is filled with restrictions placed upon the grant monies." In support of this assertion, County cites to a letter from Foundation to the president of HRMC which is "the only written document that outlines the legal restrictions [that] the [Foundation] intended to impose upon HRMC." This letter was an exhibit entered during Probert's deposition. As indicated, the deposition is not in the settled record, nor is the letter.

[¶ 22.] County asserts that it never agreed that there were no restrictions in the grant and that the following arguments by its counsel do not make this concession:

Counsel: So the original documentation that indicates that this was to go to the County is all clear. If you also look at Mr. Probert's deposition, he indicates that that *was Huron's machine to do whatever they want to with.*

Court: And you admit that on page five of your brief?

Counsel: So by saying it's Huron's to do whatever they want to with it, they were putting no restrictions [] on it. They were saying Huron could submit [this mammography unit] under this

lease provision to go to the County once the County terminated this lease. There were no restrictions that this had to stay with [HRMC].

County argues that these statements by counsel were taken out of context by the court to come to the determination that County conceded there were no stipulations, restrictions or directions in the grant. We agree with County's argument to this extent. County asserts counsel's statements were in response to HRMC's contention that Foundation had "made a specific condition that the property remain the property of HRMC." We note that HRMC's argument at the hearing was that it was the donor's intent that the unit vest in HRMC rather than Hospital. There is no assertion on the record by HRMC that there was a specific provision in the grant requiring that the unit remain with HRMC. However, it does appear that the argument above was made for the purpose of showing that there was no restriction in the grant that would prevent the unit from passing to Hospital under the provisions of the lease. Therefore, the trial court's determination that the parties agreed that there were no stipulations, restrictions or directions in the grant is not supported by the arguments at the motion hearing. Nevertheless, as noted above, there is nothing in the settled record to support County's assertion that there were numerous restrictions on the grant.

[¶ 23.] The next issue deals with the same exchange between counsel and the court cited above. Presumably based on that exchange, the court noted in its opinion that County conceded that HRMC could "do whatever it wanted" with the unit. County asserts this is incorrect for the same reason noted above, i.e. that the

such as County. In other words, had Hospital, or County on Hospital's behalf, applied for the same grant from the foundation, Pro-

bert testified it was unlikely the grant would have been approved.

court took the statement out of context. Specifically, County argues that its position was that HRMC could do whatever it wanted with the unit, but only after it placed it at Hospital and once the unit was placed at Hospital, it came within the lease agreement and belonged to County. This contention is discussed in Issue 2.

[¶ 24.] Finally, County argues that the trial court incorrectly assumed that HRMC used the grant money to purchase and place the unit at Hospital. County asserts that the finding is incorrect because it implies that HRMC placed the unit at the hospital "out of the kindness of its heart." County contends to the contrary, pursuant to the terms of the grant, that HRMC was *required* to place the unit at Hospital. Again, County relies on Mr. Probert's deposition and the terms of the grant in support of this argument, but neither of these documents are part of the settled record and it is difficult to determine whether the facts asserted by County in its brief are supported by the evidence that was before the trial court when it made its determination.

[¶ 25.] It is incumbent upon the court to draw all reasonable inferences from the facts in favor of County, the nonmoving party. While the burden of persuasion rests with the moving party to establish that there are no genuine issues of material fact, "the nonmoving party must present specific facts showing that a genuine, material issue for trial exists." *Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 7, 580 N.W.2d 606, 609 (additional citations omitted). Furthermore, as appellant, County "bears the responsibility of presenting an adequate record on appeal." *Sunflour R.R. Inc. v. Paulson*, 2003 SD 122, 6, 670 N.W.2d 518, 521 (citing *Specialty Mills, Inc. v. Citizens State Bank*, 1997 SD 7, 16, 558 N.W.2d 617, 623, n6 (additional citation omitted)). When we are confronted with an incomplete record, "our presumption is that the circuit court acted properly." *Id.*

[¶ 26.] For almost every point County asserts to be established as a genuine issue of material fact, the support it relies upon is not part of the settled record. The Court cannot draw positive inferences from facts not in the record. The facts in the record support the Foundations intent that the contribution went to HRMC and that HRMC would initially own the units. County agreed with the trial court at the motion hearing that Article 16 was unambiguous, and that "the intent and wishes of the donor [] control." Therefore, based on the record presented to this Court, we hold that the trial court did not err in granting HRMC's motion for summary judgment on this issue.

[¶ 27.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

[¶ 28.] ZINTER, Justice, writing the majority opinion on Issue 2.

[¶ 29.] **2. WHETHER HRMC WAS ENTITLED TO SUMMARY JUDGMENT DETERMINING THAT COUNTY'S OFFER TO PURCHASE THE EQUIPMENT FAILED TO COMPLY WITH ARTICLE 10 § 10.04(a) OF THE LEASE.**

[¶ 30.] Article 10 § 10.04 of the lease granted County a specifically defined option to purchase (*see* § 10.04(a)) or retain (*see* § 10.04(b)) HRMC's assets and equipment upon termination of the lease. That section of the lease provided:

*Purchase of Assets Upon Termination of Lease:*

a.  On or within thirty (30) days prior to the termination of the Lease, the County may *purchase* from the

HRMC the following *assets of HRMC* relating to the Hospital as of the date of termination: [](ii) *all of HRMC's equipment* and capital improvements hereof installed or *situated* on the Leased Premises on the termination date, *which were purchased by HRMC from funds other than as a cost of the Hospital or from the Depreciation Account, or Hospital Capital and Program Fund* [enumerated funds] []. These *assets* are hereinafter sometimes referred to as the *"HRMC's Assets."*

b. Upon termination of the Lease *any assets* purchased from the Depreciation Account, as an operational cost to the Hospital, or from the Hospital Capital and Program Fund, will be considered a lease *asset* returned to the County.

(Emphasis added).

[¶ 31.] County contends that it made an offer to purchase under subsection (a) by offering to return HRMC's $15,000 out-of-pocket cost it provided to originally acquire the mammography unit. HRMC rejected that restricted offer, and the trial court subsequently held that the rejection was justified because the offer failed to comply with subsection (a). This ruling is supported by the evidence in the record and the arguments County has preserved in this appeal.

[¶ 32.] Interestingly, only thirteen lines of the entire summary judgment transcript were devoted to the purchase issue, and County did not even argue that it made a bona fide offer to "purchase" a "HRMC asset" or "equipment" under subsection (a). Rather, when asked about the purchase issue by the trial court, County conceded that it had only offered to refund a small fraction of the unit's fair market value; i.e., the out-of-pocket cost HRMC had originally provided to supplement the grant. Therefore, County has waived the "purchase" issue by failing to present it to the trial court. *In re* Estate of Siebrasse, 2004 SD 46, ¶ 28, 678 N.W.2d 822, 829 (noting that "[w]e will ordinarily decline to review issues not properly presented to the trial court") (quoting *Estate of Gaspar v. Vogt, Brown & Merry,* 2003 SD 126, ¶ 15, 670 N.W.2d 918, 924 (citing *Knudson v. Hess,* 1996 SD 137, ¶ 8, 556 N.W.2d 73, 75)). However, even considering the merits of County's appellate arguments, it cannot prevail because: (1) as a matter of law, Article 10 § 10.04(a) did not provide an option to purchase an asset by only tendering a "partial reimbursement of original cost," and (2) there was no dispute of material fact that HRMC's "source of funds" for the original acquisition was not an "enumerated fund," which would have allowed County to retain the unit under Article 10 § 10.04(b). A more detailed review of the summary judgment transcript and affidavits confirms these conclusions.

**There Was No Legally Sufficient Offer to "Purchase" a "HRMC Asset" or "Equipment" under Article 10 § 10.04(a)**

[¶ 33.] At the summary judgment hearing, the trial court specifically asked County if it "offered to purchase this equipment[.]" Rather than responding affirmatively, County conceded that it had only offered to reimburse HRMC's out-of-pocket costs incurred in acquiring the unit. County stated it had:

[I]ndicated to Huron Regional Medical Center that the *grant portion* that paid for that machine *was the County's property* based upon the lease. [Therefore,] [t]he hospital indicated that the purchase price, that *excess amount* [the $15,000] *that Huron had to pay out of*

*their own pocket,* that Jerauld County would pay for that additional amount[.] (Emphasis added.)

■ [¶ 34.] Thus, County did not make a bona fide offer to *purchase* the *equipment.* Instead, it only offered to make a partial reimbursement of costs; i.e., HRMC's original $15,000 out-of-pocket cost to acquire the unit. County's claim and delivery affidavit confirms that fact. Although County only offered $15,000 to "purchase" the machine, County expressly conceded in its affidavit that its estimate of "the total value of such machine" was $50,000. Therefore, under County's own version of the facts, it made no bona fide offer to pay the fair market value of a "HRMC asset" or "equipment" in compliance with Article 10 § 10.04(a).

[¶ 35.] The dissent declines to address the fact that County has conceded this point in its affidavit. More importantly, neither the dissent nor the County can now claim a better version of the facts than that presented in County's own affidavit. *See Western States Land & Cattle Co., Inc. v. Lexington Ins. Co.,* 459 N.W.2d 429, 434 (S.D.1990) (noting that "[a] party to an appeal cannot claim the benefit of a better version of the facts more favorable

to his contentions than he has given in his own testimony") (citing *Drier v. Perfection, Inc.,* 259 N.W.2d 496, 508 (S.D.1977)).

[¶ 36.] Although it is also asserted that this disposition of Issue 2 is an improper "factual determination that the County's offer was insufficient[,]" *infra* ¶ 48, the determination is a question of law. It is a legal matter because there is no dispute of fact about the terms of the offer, and there is nothing in the language of Article 10 § 10.04(a) that authorizes purchases of an asset by only returning the original cost of some *portion*[2] of that asset. Rather, the lease only granted the option to purchase or retain the *asset* or *equipment* situated on the premises by the payment of its fair market value.

[¶ 37.] In the final analysis, Article 10 § 10.04(a) only provided the option to purchase the mammography unit, and County simply did not make any offer to pay the fair market value of the unit. Because Article 10 § 10.04(a) did not grant an option to "purchase" by merely tendering a partial reimbursement of costs, County made no bona fide offer to purchase within the meaning of Article 10 § 10.04(a).

---

2. In order to reverse the trial court's summary judgment, the dissent creates a "portion purchase right," which is neither in the lease nor asserted by the parties. The existence of such a "portion purchase right" is the premise of that opinion. The dissent repeatedly describes it as the contractual right to purchase parts or *portions* of assets: in this case, the purported right to purchase *a portion of a mammography machine. See infra* ¶ 48 ("by its plain language, the parties' agreement gives County the option to purchase *that portion of the mammography machine* purchased with unenumerated funds"); ¶ 49 (*"that portion of the unit* purchased with the $15,000 is deemed 'a lease asset' and *must be returned* to the County pursuant to subsection (b) without payment[,]" and "County had the option to purchase *that portion of the unit* not paid for

by the Foundation"); ¶ 51 (*"[t]hat portion of the unit* paid for with the $15,000 ... *must be automatically returned* to the County ... otherwise, County has the *option to purchase that portion"*); and ¶ 62 ("the present value of the property purchased by the $15,000 should be returned to County") (emphasis added).

> There is no basis for a "portion purchase right" in this lease. Moreover, the dissent's construction leads to the absurd result that County has a right to cut up, divide, or purchase parts or portions of equipment like a mammography unit. We do not construe contracts to reach an absurd result. *See Nelson v. Schellpfeffer,* 2003 SD 7, ¶ 12, 656 N.W.2d 740, 743 (noting that this Court is constrained from interpreting a contract so that it would produce an absurd result) (citation omitted).

## No Dispute of Fact Regarding the Source of Funds

[¶ 38.] There is also no dispute of fact about the source of the funds (either HRMC's $15,000 or the grant[3]) used to purchase the unit. This fact is important because if the funds came from an "enumerated fund," County would be entitled to retain the unit under Article 10 § 10.04(b) with no obligation to purchase it under § 10.04(a).

[¶ 39.] Although County has never argued that there was a dispute of fact over "the source of the funds," the dissent attempts to create one. Again, however, County has conceded this point. In the emphasized passage of the transcript set forth in ¶ 33, County conceded that its $15,000 offer was a return of *HRMC's funds;* i.e., the amount HRMC had paid "out of their own pocket." Moreover, in County's claim and delivery affidavit, County conceded that the source of funds was HRMC's money. County stated: "That the portion of the mammography machine *which was paid for by Huron Regional Medical Center* is subject to Lease provisions [§ 10.04(a),] which allow the County *to purchase* such property from Huron Regional Medical Center at the close of the Lease." (Emphasis added.)

[¶ 40.] By this statement, County clearly conceded that the $15,000 was *HRMC's funds,* rather than an "operational cost of the hospital" or any of the other "enumerated funds" that would have allowed County to retain the asset without a purchase under Article 10 § 10.04(b). By this statement County has also *specifically alleged* that the mammography unit was subject to the *purchase* provision (§ 10.04(a)), which can only occur if the funds were "non-enumerated." Consequently, County conceded that there was no dispute of fact that the $15,000 acquisition funds were not "enumerated funds" that would have allowed the County to retain the unit without purchasing it (under subsection (b)).

## Conclusion

[¶ 41.] Because there is no *material*[4] issue of disputed fact about County's purported offer to purchase, we affirm the trial court. Even assuming County's offer complied with all other prerequisites, it was *legally* insufficient to constitute an "offer of purchase" under the terms of Article 10 § 10.04(a). The offer was legal-

---

**3.** The dissent finds a material issue of disputed fact by declaring, without citation or authority, that which funds were used to purchase that portion of the unit ($15,000 worth) is "an important issue of material fact" to be determined by the fact finder. *Infra* ¶ 49. The dissent concedes that the grant was not an enumerated fund. *See infra* ¶ 48.

**4.** Even assuming that County complied with all other lease provisions, it cannot prevail on the motion for summary judgment because County made no bona fide offer to purchase. *See supra* ¶ 34. Therefore, the dissent's other disputes of fact are not *material. See, e.g.,* ¶ 51 (suggesting a dispute of fact exists concerning the exercise of the option within the 30–day requirement); ¶ 60 (suggesting a dispute of fact exists concerning the fair market value of "larger portion of the unit"). These "disputes," which were never raised below, are not material because they do not change the outcome. *See Saiz v. Horn,* 2003 SD 94, ¶ 8, 668 N.W.2d 332, 335 (noting that "[d]isputed facts become material if they affect the outcome of a case under the law") (citations omitted).

So also, the dissent's assertion that "[t]here is sufficient evidence in the record to support the inference that HRMC denied County its option to purchase the unit at *any price* and thereby breached the terms of the lease[,]" *infra* ¶ 52, is not supported by the record. Notably, the dissent does not identify one fact in the record (as opposed to a pleading) from which this inference is drawn. It is also noteworthy that this argument was never raised by County here or below.

ly insufficient because it was not an offer to pay the fair market value of the mammography unit. It was nothing more than an offer to reimburse HRMC for a small portion of the original cost of the unit. That "partial reimbursement offer" did not comply with Article 10 § 10.04(a) as a matter of law.

[¶ 42.] KONENKAMP and MEIERHENRY, Justices, concur.

[¶ 43.] SABERS, Justice dissenting on Issue 2.

[¶ 44.] **2. THE TRIAL COURT ERRED IN CONSTRUING THE LEASE TOO RESTRICTIVELY AND IN DETERMINING THAT COUNTY'S OFFER FAILED TO COMPLY WITH THE LEASE PROVISIONS.**

[¶ 45.] We first note that the lease agreement *is in* the record and therefore we must determine whether the trial court properly interpreted or construed its terms. As indicated, the parties agreed that the lease agreement was unambiguous, but then disagreed as to its meaning and application to the facts. Although it is not a model of clarity, it is capable of being understood. However, the drafters of this lease agreement should heed the writer's advice that one should write so that one cannot be misunderstood.

[¶ 46.] Article 10 § 10.04 provides in relevant part:

*Purchase of Assets Upon Termination of Lease:*

a. On or within thirty (30) days prior to the termination of the Lease, the County may purchase from the HRMC the following assets of HRMC relating to the Hospital as of the date of termination: (i) patient account receivable, and all other account receivables including agency account receivables, whether recorded or unrecorded, (ii) *all of HRMC's equipment* and capital improvements hereof installed or *situated* on the Leased Premises on the termination date, *which were purchased by HRMC from funds other than as a cost of the Hospital or from the Depreciation Account, or Hospital Capital and Program Fund* [enumerated funds] and (iii) others, if applicable. These assets are hereinafter sometimes referred to as the "HRMC's Assets."

b. Upon termination of the Lease any assets purchased from the Depreciation Account, as an operational cost to the Hospital, or from the Hospital Capital and Program Fund, will be considered a lease asset returned to the County.

c. Upon termination of the Lease any assets purchased by HRMC other than those described in 10.04(b) may be removed by HRMC as its property. The County agrees to reimburse HRMC for the reasonable value of any assets purchased by HRMC other than described in 10.04(b) which can not practically be removed upon termination.

(Emphasis supplied.)

[¶ 47.] The presumption established by this article of the lease agreement is that County will have the right to either:

1) automatic return of the HRMC assets without payment, or

2) an option to purchase the assets upon termination of the lease.

This presumption, coupled with our standard of review, which requires us to view the facts in a light most favorable to the County, requires reversal on this issue.

[¶ 48.] Subsection (a) gives the County the right to purchase any "HRMC assets"

which were purchased by HRMC from funds *other than:*

1) as a cost of the Hospital or

2) the Depreciation Account,[5] or

3) the Hospital Capital and Program Fund.[6]

It is undisputed that HRMC purchased the mammography machines, at least in part, with funds provided by the Foundation, and not with funds from any of these enumerated funds. Therefore, by its plain language, the parties' agreement gives County the option to purchase that portion of the mammography machine purchased with unenumerated funds from the Foundation "on or within thirty (30) days prior to the termination of the Lease." Despite lip service to this provision of the agreement, the majority opinion effectively excises subsection (a) by its factual determination that the County's offer was insufficient.

[¶ 49.] As noted above, HRMC paid $15,000 for the machine in addition to the $58,000 provided by the Foundation. In his affidavit, John Single, president of HRMC stated, "the mammography machine that was placed at [Hospital] [] was not purchased from the Depreciation Account, or Hospital Capital and Program Fund." However, the affidavit fails to iden-

tify the source of the $15,000 HRMC used to supplement the grant. This is an important issue of material fact, because subsection (a) and (b), taken together, allow County the right to purchase or automatically recover HRMC assets without payment depending upon which funds were used to purchase the assets in the first instance. Specifically, if the $15,000 was an "operational cost to the hospital," that portion of the unit purchased with the $15,000 is deemed "a lease asset" and must be returned to the County pursuant to subsection (b) without payment. However, even if the $15,000 did not come from one of the enumerated funds in subsection (a), County had the option to purchase that portion of the unit not paid for by the Foundation.

[¶ 50.] In summary, the question is not whether County is *entitled* to *recoup* the HRMC asset, but how they may recoup it. That portion paid for by the Foundation falls outside the enumerated funds and therefore, by the terms of the agreement, if County made an offer on or within 30 days prior to termination of the lease, it had the right to purchase the mammography machine.

[¶ 51.] That portion of the unit paid for with the $15,000 contributed by HRMC

5. Article 1 § 1.03.04 creates the depreciation account:

> The County and HRMC agree an account for depreciation will be established and 100% funded based upon the depreciation of equipment and the structure as allowed by Medicare. This depreciation account will be funded by the revenues from the operation of the hospital as a line item expense. Funds from this account may be withdrawn by HRMC for the purpose of capital equipment purchase and renovation or replacement and for structural additions or renovation to the extent such items are included in the annual budget. HRMC shall annually submit to the County for its approval those items to be included in the

budget. By mutual agreement of the County and HRMC expenditures made as line item expenses in the budget, in addition to those funded by depreciation, may be made for capital improvements.

6. Article 1 § 1.03 creates the Hospital Capital and Program Fund, providing in part:

> During the Term of this Lease, HRMC agrees to pay to a Hospital Capital and Program Fund, for the rights and privileges granted HRMC under this Lease, the sum of 25% of Net revenues. The Hospital Capital and Program Fund will be used by HRMC for hospital related purchases and expenses relating to capital improvements and Hospital programs.

must be automatically returned to the County if it was paid as an operational cost to the hospital, otherwise, County has the option to purchase that portion. Which funds were used to purchase that portion of the unit is a genuine issue of material fact to be determined by the fact finder. Likewise, the fact finder must also determine whether County properly exercised its option to purchase on or within 30 days prior to termination of the lease. If County did not properly exercise this option, subsection (c) applies and HRMC may remove the asset from the property unless it is a fixture.

[¶ 52.] The majority concludes that HRMC is entitled to summary judgment because the County did not make a "bona fide offer to purchase" the equipment. Principles of summary judgment require that we view all facts in favor of the non-moving party. There is sufficient evidence in the record to support the inference that HRMC denied County its option to purchase the unit at *any price* and thereby breached the terms of the lease. For example, in its pleadings, HRMC asserted that County was "prohibited from purchasing the equipment in question." Since this was HRMC's position from the start, County is entitled to have a fact finder determine whether it intended to faithfully negotiate a purchase of the unit for fair market value.

[¶ 53.] The majority beats up on the County because the County did not present these arguments in the same or best manner. That the County could have presented its claim in a more persuasive manner does not justify an unwarranted decision which is contrary to the contract and the law. The defendant is not entitled to summary judgment unless it can establish that there is no genuine issue of material fact and it cannot.

[¶ 54.] In order to simplify the issue, we summarize the terms of Article 10 § 10.04 as it relates to this case.

[¶ 55.] First, if the money that HRMC used to purchase the asset is from the enumerated funds, i.e. as a cost of the Hospital, from the Depreciation Account, or Hospital Capital and Program Fund, then the "HRMC[] asset" must be returned to the County automatically without payment. In other words, an asset purchased from one of these funds is considered a lease asset, and, upon termination of the lease, that asset is automatically "returned to" County. Article 10 § 10.04(b).

[¶ 56.] Second, County has an option to purchase all of "HRMC's assets" relating to the hospital. Article 10 § 10.04(a). This includes "HRMC's assets" or "equipment" situated on the leased premises on the termination date, "which were purchased by HRMC" from funds other than those enumerated, and would include the mammography unit if it was purchased in part by HRMC with funds not enumerated.

[¶ 57.] Third, County must exercise any option to purchase on or within 30 days prior to termination of the lease.

[¶ 58.] Finally, if the asset is not a lease asset and County did not exercise its option on or within 30 days prior to termination, HRMC has the right to remove the asset and retain it as its own property unless the equipment is a fixture, which County must purchase for reasonable value. Article 10 § 10.04(c).

[¶ 59.] The agreement requires the equipment to be categorized based on the source of the funds used to purchase the unit. This includes the mammography unit at issue.

[¶ 60.] According to our holding under Issue 1, the $58,000 was acquired by

HRMC as a gift from Foundation. Although that money was not part of any of the enumerated funds under subsection (b) and that portion of the assets purchased with Foundation money cannot be considered a lease asset under subsection (b), it is subject to purchase by County under subsection (a). In other words, if County attempted to exercise its option to purchase the unit within 30 days prior to the lease termination, subsection (a) applies because the grant clearly falls outside of the enumerated funds in subsection (a). Therefore, there are genuine issues of material fact whether 1) County complied with the terms of subsection (a) and if so, 2) the present value of the larger portion of the unit purchased by HRMC with the Foundation's contribution.

[¶ 61.] As indicated, the only evidence on the record as to the source of the funds to pay for the smaller portion of the unit is the affidavit of John Single, president of HRMC. He stated, "the mammography machine that was placed at [Hospital] [] was not purchased from the Depreciation Account, or Hospital Capital and Program Fund." It is important to note that the affidavit failed to exclude the other source of the enumerated funds, which is "as a cost of the Hospital." Therefore, Single's affidavit is insufficient to support HRMC's assertion that County was not entitled to purchase the asset because he does not indicate, nor is there evidence in the record, that the $15,000 paid by HRMC was not a "hospital cost." HRMC has the burden to show that there are no genuine issues of material fact. *Thiewes,* 448 N.W.2d at 2.

[¶ 62.] A genuine issue of material fact exists as to the source of the funds used by HRMC to purchase the unit. If HRMC purchased the unit from funds other than those listed in subsection (b), it may have been entitled to remove the asset from the premises "as its property" if County failed to properly exercise its option to purchase within 30 days prior to the lease termination as provided in subsection (a). Finally, if it is determined that the source of the money was an operational cost to the Hospital, the present value of the property purchased by the $15,000 should be returned to County without payment pursuant to subsection (b). All of these questions raise genuine issues of material fact which preclude summary judgment on this issue.

[¶ 63.] In addition, the trial court erred as a matter of law in construing or interpreting the lease provision too restrictively in relation to the mammography unit purchased by HRMC with funds acquired by gift.

[¶ 64.] The trial court's grant of summary judgment on this issue should be reversed and remanded for trial.

[¶ 65.] GILBERTSON, Chief Justice, concurs with this writing.